Julius Dwaine PERRY, Appellant,

v.

The STATE of Texas, Appellee.

No. 43389.

Court of Criminal Appeals of Texas.

Feb. 3, 1971.

Rehearing Denied March 24, 1971.

Lawrence R. Green, Dallas, (By Court Appointment), for appellant.

Henry Wade, Dist. Atty., Harry J. Schulz, Jr., W. T. Westmoreland, Jr., and Edgar A. Mason, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for murder. The punishment was assessed by the jury at twenty years.

John Ambrose Andres, a 52-year-old prisoner, was beaten to death in a hospital ward of the Dallas County Jail.

Jack Hines was acting as corridor boss of the ward and the appellant was his assistant. Both were prisoners. It was shown that corridor bosses were to report violations of the rules, but they had no authority to use force on the prisoners. Apparently Hines was angry because Andres had stolen some "penny" candy in the ward.

Shortly before the attack on Andres, Hines and the appellant were talking in the rear of the ward. After the conversation was over, they started walking toward Andres who was leaning against a bunk. Hines walked down one row of beds and appellant followed shortly behind down another row, converging on Andres from opposite sides. Hines, who was a younger man, hit Andres with his fist knocking him into appellant and the two went backwards. The appellant then grabbed Andres, pinioned his arms to his body and held him up while Hines continued to hit him hard in the face with both hands. Andres begged Hines to stop. Hines continued the beating to the front of the ward where Andres slumped to the floor. Attempts to revive him failed. He died several hours later from a massive hemorrhage in the subarachnoid region of the head around the brain which, in the opinion of the pathologist, was caused by a blow that had broken the jaw.

When a jailer arrived to investigate the commotion, someone told him "the man is having a seizure." When the jailer asked what happened Hines replied, "I had to slap him."

■ There was sufficient evidence for the jurors, who pass upon the credibility of the witnesses and the weight to be given their testimony, to conclude that the appellant acted as a co-principal with Hines in the homicide.

■ In the second ground of error appellant contends that on redirect exam-

ination of the jailer Garrett reversible error was committed when the following transpired:

"Q. (Mr. Ormesher, assistant district attorney) Now, on occasions where you have seen other prisoners or other corridor bosses bringing prisoners to a door of a cell, you have never seen them beat him to death?

"A. There was no force used."

Appellant's counsel then objected that the question was highly prejudicial.

On direct examination Garrett had testified that the chief jailer appointed a corridor boss who would assign men in each corridor to work and that a corridor boss had no authority to lay his hands on other prisoners.

During cross-examination he was asked if a corridor boss had authority to escort an offending prisoner to jail. He testified that they did not but on occasions they had done so when it was necessary to restrain prisoners and take them to a single cell. On recross-examination appellant's counsel questioned Garrett if he was sure if force was never used.

No prejudicial or reversible error has been shown. The second ground of error is overruled.

Next, appellant contends that the court erred in permitting the State, over objection, to re-open after both sides had rested. After the State had rested, the appellant chose not to present any evidence and rested. The State then moved to re-open and, after a hearing, the court granted the motion. The witness Jones was called. His testimony will be discussed in connection with the next four grounds of error.

■■ The court in its sound discretion can admit evidence at any time before argument closes and such discretion will be

reversed only when abused. Article 36.02, Vernon's Ann.C.C.P., and authorities collated thereunder. See McCullough v. State, Tex.Cr.App., 425 S.W.2d 359, and Lenox v. State, 144 Tex.Cr.R. 226, 161 S.W.2d 1085. No abuse of discretion has been shown.

Ground of error number three is overruled.

In the fourth, fifth, sixth and seventh grounds of error complaint is made that the court erred in requiring the witness Jones to testify after he had claimed that his Fifth Amendment right would be violated, and that the court erred in permitting the State to impeach its own witness.

Jones testified that he was in the hospital ward on the day of the assault. When asked if he saw a fight between some prisoners he stated, "Well, I would like to take the 5th Commandment (sic) on that," and then stated that he refused to answer because it might incriminate him. Appellant's objection to further questioning was overruled. Jones then testified that he was not involved in the fight.[1] The prosecution then asked him if a man was beaten in his presence, and he replied:

"Well, Jack was hitting him—I mean if he was actually trying to beat him, because the man looked kind of upset, but Perry wasn't holding him for him to beat him, Perry—after he hit him Perry grabbed him to keep—"

At this time the State asked that the jury be removed. The prosecutor then took the stand and claimed surprise because Jones had made a written statement in which he said that the appellant had aided in the attack. The statement was read into the record out of the presence of the jury. The court then allowed the prosecution to question Jones in regard to the statement. Jones was then admonished

1. There is no showing or contention that Jones was connected with the attack. It appears that he did not want to testify because it could hurt him for the rest of his time in prison.

as to his right not to answer any question which he felt might incriminate him.

The jury returned to the courtroom and the State proceeded to examine Jones, using the statement to formulate its questions. Jones admitted having made a statement and that he had sworn to the truth of it.

There was a sufficient showing for the court to conclude that the prosecutor was surprised at the answer of the witness.

The testimony by Jones that "* * * Perry wasn't holding him for him (Hines) to beat him, Perry—after he hit him Perry grabbed him to keep—" before the interruption was contrary to that contained in the statement and was injurious to the State's case.

This is not a case of the mere failure of a witness to give testimony expected by the State as contended by the appellant.

■ Assuming that the questioning of the witness from the previous statement amounted to impeachment, it was proper under Article 38.28, V.A.C.C.P. See Wright v. State, Tex.Cr.App., 422 S.W.2d 184; Sloan v. State, Tex.Cr.App., 409 S.W.2d 412, and Shaw v. State, 89 Tex. Cr.R. 205, 229 S.W.2d 509.

No error is shown. The fourth, fifth, sixth and seventh grounds of error are overruled.

In the eighth, ninth, eleventh and twelfth grounds of error complaint is made that the court erred in admitting into evidence at the punishment stage of the trial copies of records of prior convictions of the appellant. The contention is that such evidence is hearsay.

■ We have examined the exhibits in question and conclude that they were properly admitted into evidence under the requirements of Article 3731a, Vernon's Ann.Civ.St., pursuant to Article 38.02, V.A.C.C.P. See Vessels v. State, Tex.Cr. App., 432 S.W.2d 108.

■ The contention that the court erred in admitting into evidence at the punishment stage of the trial the indictment, judgment and order placing appellant on probation for the offense of passing a worthless check is without merit. Even though there was no final conviction, the probation was still in effect and the records were admissible under Article 37.07, Subsection 3(a), V.A.C.C.P.

■ In the thirteenth ground of error appellant complains that reversible error was committed when the prosecutor at the penalty stage of the trial made the following argument:

"In other words, what would the family of the dead man want as a proper punishment for what has happened to their loved one. You might say to yourself what would you want in a similar situation if you were unfortunate enough to have a relative in jail for passing a check. * * *"

The court sustained appellant's objection and instructed the jury to disregard the argument. The motion for mistrial was overruled. This Court, in a somewhat similar situation in Ramos v. State, Tex.Cr. App., 419 S.W.2d 359, held that an instruction for jurors not to consider the remarks of the prosecutor where he referred to the feelings of the victim's wife and children was not reversible.

The argument should not have been made. We hold, however, that in view of the instruction of the trial court, no reversible error is shown.

The thirteenth ground of error is overruled.

In the final three grounds of error complaint is made of the trial court's refusal to relieve appellant's attorney of record and appoint other counsel.

Trial counsel also perfected the appeal. He was the third attorney appointed for the appellant, the first two having been removed at the request of appellant.

The State is under no duty to search for counsel until it finds one who will agree with a defendant. Jackson v. United States, 258 F.Supp. 175 (D.C.), affirmed 384 F.2d 375 (5th Cir. 1967); Martin v. State, Tex.Cr.App., 460 S.W.2d 919. We perceive no error in the court's failure to appoint other counsel especially in light of the thorough job done by counsel during the trial and on appeal. We find nothing in the record contrary to the statement of the trial judge that counsel was able, experienced and qualified.

Appellant further contends that it was error not to appoint different counsel, because the appellant had filed a civil suit against his trial counsel based on the Civil Rights Act which created a conflict of interest.

This is somewhat analagous to Chamberlain v. State, Tex.Cr.App., 453 S.W.2d 490, where this Court held that the filing of a civil suit by a defendant against a judge who was to preside at that defendant's criminal trial did not require the judge to disqualify himself. There it was stated:

> "If the mere filing of a civil action against the judge presiding at a criminal case would disqualify him, then any judge would be subject to disqualification at the whim of a defendant. Such practice if allowed, could delay or prevent the trial of a case."

Likewise, if appellant's contention were upheld, a defendant could effectively delay or prevent an appeal (or trial) by filing a civil suit against his appointed counsel.

All of the motions, applications for various writs filed in this Court as well as copies of those filed in other courts considered with the briefs and supplemental briefs filed by appellant in his own behalf do not show inadequacy of counsel or reversible error.

The last three grounds of error are overruled.

There being no reversible error, the judgment is affirmed.