**Norman Aaron THOMLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–96–01544–CR to 01–96–01546–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 11, 1999.

Rehearing Overruled March 11, 1999.

Allen C. Isbell, Houston, for appellant.

John B. Holmes, Houston, Eric Kugler, Houston, for appellee.

Panel consists of Justices MIRABAL, WILSON and TAFT.

## OPINION

TAFT, J.

On his pleas of no contest, a jury found appellant, Norman Aaron Thomley, guilty of intoxication manslaughter in three cases tried jointly. The jury assessed punishment at eight years in prison in each case. The trial court stacked the sentences. We consider whether appellant preserved error by the trial court in: 1) denying appellant the opportunity to ask a proper question of a prospective juror; and (2) sentencing appellant to the written jury verdicts rather than the verdicts read aloud and confirmed by the jury. We affirm.

### Facts

In late July 1996, the Winborn family had come from Arkansas for a family reunion in Magnolia, Texas. After spending the day of July 27 at Mrs. Winborn's mother's home, Mr. and Mrs. Winborn took two of their six

children and two nieces back to their hotel to watch a movie. Mr. Winborn drove the family's brand new Blazer; the children were in the rear seat. While they were stopped at a red light, appellant drove his white truck at a high rate of speed into the rear of the Blazer. The collision pushed the Blazer through the intersection and into a ditch on the far side, causing it to burst into flames. Mrs. Winborn, one of her children, and one niece managed to escape the inferno. Mr. Winborn, the other Winborn child, and the other niece perished in flames. The survivors suffered severe burns requiring extensive skin grafts and pressurized suits to keep their skin from swelling.

Appellant was not injured in the crash. He made comments at the scene lamenting the damage to his new truck. He professed not to know how the Winborn's vehicle got in his way. Police found partially-filled beer cans, broken alcohol bottles, partially-smoked marijuana cigarettes, and a plastic bag of marijuana in appellant's truck. A test of a blood sample forcibly taken from appellant revealed a blood alcohol level of .295, almost three times the legal definition of intoxication.

### Voir Dire Limitation

In his first point of error, appellant contends the trial court abused its discretion by denying appellant the opportunity to question potential jurors to elicit any bias in favor of the deceased victim's status as a child. The trial court sustained the State's objections to two questions asking a prospective juror whether he or she could be fair and consider the full range of punishment, including probation, if the victim were a child. Appellant argues the denial of his constitutional right to ask a proper question is reversible error because the harm is manifest.

The State claims defense counsel was improperly trying to obtain a commitment from a prospective juror, number 51, who was successfully challenged for cause by defense counsel, rendering any error harmless.

■ Appellant acknowledges that harm is not presumed when defense counsel is prevented from asking a proper question of only one prospective juror if the defendant does not exhaust all his peremptory strikes. Appellant argues that the questioning here was of all prospective jurors.

To place this point of error in context, defense counsel was asking if any prospective juror felt that probation was not appropriate in cases involving accidents and death. He had asked the question row by row, and we pick up the questioning at the last row:

> DEFENSE COUNSEL: Anybody else in that last row back there that after thinking about it says Mr. Thomley deserves—not just a fleeting considering but a real consideration—that you just can't do that, consider it in an appropriate case?
>
> Anybody in the last row?
>
> This row? This one?
>
> I think you spoke earlier, Mr. Alvarez; is that right?
>
> A PROSPECTIVE JUROR: Correct.
>
> DEFENSE COUNSEL: All right.
>
> Now let me tell you—yes, ma'am?
>
> A PROSPECTIVE JUROR: My ex-husband was the chief of police in a city here in the State of Texas.
>
> PROSECUTOR: Which city was that?
>
> A PROSPECTIVE JUROR: Dimmitt, Castro County.
>
> DEFENSE COUNSEL: And he probably told you war stories and everything else?
>
> A PROSPECTIVE JUROR: Oh, yes.
>
> DEFENSE COUNSEL: Anything about listening to your husband tell you stories that makes you think you wouldn't be an appropriate juror for the case?
>
> A PROSPECTIVE JUROR: Possibly so. I also have a brother that had a lot of D.W.I.'s and has spent time—
>
> DEFENSE COUNSEL: What number are you?
>
> A PROSPECTIVE JUROR: 51.
>
> DEFENSE COUNSEL: You are probably out of reach over there. All our friends over here are probably safe from being put on a jury. You may want to switch seats with them now.
>
> I appreciate that. Thank you.

As [the prosecutor] and I told you, we can't tell you the facts about the case. We can't go into it. We're allowed to talk to you about circumstances involving homicide and against particular people.

Okay?

And what I am going to tell you is that in a particular case where the victim of the accident is a child, if it is a child, would that change your answer to any of the questions that you have been given?

If you have got individuals who were children that were unfortunately killed in an accident—I saw on the sheet where most of you have children or may.

Does that change your answer about probation in a case where you learn that the victims of the accident were children who were unfortunately killed?

Does that change your answers?

A PROSPECTIVE JUROR: I have a question. You are changing the circumstances now.

DEFENSE COUNSEL: I'm not asking you if that's appropriate or not. I can't ask you that. I wish I could.

A PROSPECTIVE JUROR: All at once you are changing the circumstances.

If it is a child, then the question becomes is it ever acceptable.

DEFENSE COUNSEL: Right. That is for you to determine if you are a juror.

A PROSPECTIVE JUROR: I'm getting a little concerned about that.

DEFENSE COUNSEL: I can't talk to you about the particular facts of this case. The law allows us to say only that—

A PROSPECTIVE JUROR: I understand. I'm just trying to clear it in my own mind.

DEFENSE COUNSEL: We are only allowed to talk to you about the circumstances, and that may or may not be the case.

I'm just asking you: In case it was children or in some cases you may have a victim who is an old person or black person or white person, would that change any of the answers you have given?

A PROSPECTIVE JUROR: If that was a situation, obviously I would have to make a judgment at that time.

DEFENSE COUNSEL: Right. I'm just saying: If there was a case involving a child, would that automatically make your mind up that there would be no way I could give probation in any case scenario involving the death of any child that was killed in that case?

A PROSPECTIVE JUROR: That's what I am—

DEFENSE COUNSEL: There is a myriad of examples that I could give you where children are involved.

What I am asking you is: If just because a child was involved, would you automatically say, no way in the world could probation be a consideration?

PROSECUTOR: I object to that question, asking the jury to commit to a certain set of facts, Your Honor.

THE COURT: Sustained.

DEFENSE COUNSEL: Let me ask you this: In any case, be it a murder or robbery, where there are victims involved that are children, in any particular case would the fact that children are involved cause you to be unfair to the defendant and not consider the full range of punishment?

PROSECUTOR: Same objection, Your Honor.

THE COURT: Sustained.

Our reading of the record shows that defense counsel had previously questioned prospective juror 51 and had moved on to another area of inquiry. Therefore, we reject the State's position that the record reflects defense counsel's denied question was asked of prospective juror 51. While the State's objection mentioned asking *the jury* to commit to a certain set of facts, our reading of the record is that counsel for appellant was addressing his question to a single, unidentified prospective juror.

■ This case differs from *Maddux v. State,* 862 S.W.2d 590 (Tex.Crim.App.1993),

on which appellant relies. In *Maddux,* immediately before the State's objection, defense counsel asked how many of the jury panel members would still be able to consider probation for murder if the victim were a child. *Id.* at 591. To be certain error was preserved, after the trial court sustained the State's two objections, similar to those in this case, defense counsel asked the record to reflect he would like to have asked that question of each and every juror. *Id.* Questioning of the entire panel of prospective jurors can be shown by either of the circumstances present in *Maddux:* (1) a question addressed to the entire panel; or (2) making a record showing the defendant's request to question all venire members. Neither circumstance is present here.

■■■ To preserve error for denial of a proper question addressed to only one prospective juror, defense counsel must exercise a peremptory strike on the prospective juror in question, exhaust his peremptory strikes, and request an additional peremptory strike that is denied by the trial court. *See Janecka v. State,* 937 S.W.2d 456, 470–71 (Tex. Crim.App.1996). Here, appellant did not cause the record to reflect the identity of the prospective juror to whom the denied question was addressed. Thus, we are unable to determine that appellant exercised a peremptory strike on the prospective juror in question. Appellant has not preserved error under his first point of error. *Id.* at 470.

Accordingly, we overrule appellant's first point of error.

### Verdict Variances

In points of error two through six, appellant contends the trial court erred in sentencing appellant according to the jury's written verdicts rather than the verdict the trial court read orally, to which all jurors affirmatively assented, and in not granting appellant's request for a polling of the jury and his motion for mistrial when the variance was discovered. Appellant argues that the trial court had a ministerial duty to enter the verdict read orally. Therefore, appellant requests reformation of the sentences to conform to the verdicts read orally. In the alternative, appellant seeks reversal and remand for a new punishment hearing.

In addition to the three intoxication manslaughter cases, appellant was also tried for three intoxication assault cases (involving the surviving victims), arising from the same transaction, in one joint trial. The jury's written verdicts assessed eight years of probation for the three intoxication assault cases and eight years of confinement for the three intoxication manslaughter cases. The verdicts were announced by the trial court in the following manner, however:

> THE COURT: Ladies and gentlemen of the jury, if you have reached a verdict, please hand the verdict to the bailiff.
>
> You may be seated.
>
> All right.
>
> This is the State of Texas versus Norman Aaron Thomley.
>
> In Cause No. 728785, 728786, 728787, 728788, 728789, and 728790, we, the jury, having found the defendant guilty, assess his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for eight years and further find the defendant has never before been convicted of a felony in this or any other state and recommend community supervision of the sentence.
>
> Ladies and gentlemen, in all of these cause numbers, is this your verdict; so say you-all?
>
> (The members of the jury answer by saying "yes" or nodding his or her head affirmatively.)
>
> THE COURT: Does either side wish to have the jury polled at this time?
>
> DEFENSE COUNSEL: No, Your Honor.
>
> PROSECUTOR: No.
>
> THE COURT: Sentencing will commence tomorrow morning.

The following day, the trial court assessed sentences according to the written verdicts, stacking the eight-year sentences for intoxication manslaughter. The trial court then allowed a member of the family to make a statement as to the effect of the offense on the victim. Defense counsel then stated for the record the variance between the written

verdicts and the verdicts announced by the trial court without dissent from any juror. Appellant asked that the jury be polled because of the variance, and for a mistrial. The trial court denied the request for a jury polling as untimely, and also denied the request for a mistrial. Defense counsel explained that because the variance was not discovered until sentencing, there had been no timely opportunity to poll the jury on the unknown variance.

The State takes the position that appellant has waived his second through fifth points of error because his trial objection (request for jury polling) does not comport to his appellate complaints (entering wrong verdicts). The State also takes the position that the jury's written pronouncement is its verdict and the trial court had a ministerial duty to enter that verdict as appellant's sentence. *See* Tex.Code Crim.P.Ann. art. 37.01 (Vernon 1981) ("A 'verdict' is a written declaration by a jury of its decision of the issue submitted to it in the case.").

■ At the outset, it is clear the trial court erred. By not reading each verdict separately, the trial court put the jurors in a difficult position trying to answer whether the verdict read was their verdict. Because it was not their verdict, "in all of these cause numbers," the jurors contributed to the error by not speaking up, when the trial court asked if that was their verdict. When appellant first learned of the mistake the following day, he requested first a polling of the jury and then a mistrial. Appellant did not request entry of the verdicts mistakenly read by the trial court, as he does for the first time on appeal. Nevertheless, appellant cannot be faulted for not requesting a polling of the jury sooner. Indeed, it is not at all certain that a polling of the jury would have revealed the different verdicts based on the manner in which the trial court read the verdicts.

■ Under the peculiar circumstances of this case, we conclude that the trial court erred in denying appellant's request that the jurors be polled. Nevertheless, it is clear that if there were any substance to appellant's complaint, he could have preserved it by filing a motion for new trial.

A motion for new trial is necessary to adduce facts of a matter not otherwise shown on the record. *See* Tex.R.App.P. 21.2. The motion shall be granted when the trial court has committed some material error calculated to injure the rights of the accused or when the jury has engaged in such misconduct that the accused has not received a fair and impartial trial. *See* Tex.R.App.P. 21 .3(b), (g).

Appellate counsel filed notice of appeal and a designation of the record a week after sentencing, well within the time in which a motion for new trial could have been filed. In a motion for new trial, appellant could have brought jurors to testify what their verdict was. Appellant could have conducted his own polling of the jury. This is the only way we could determine whether any harm resulted from the trial court's misreading of the verdicts. Under these circumstances, we hold that appellant has not preserved his sixth point of error. *See Trout v. State,* 702 S.W.2d 618, 620 (Tex.Crim.App.1985) (jury misconduct); *Mata v. State,* 867 S.W.2d 798, 802–03 (Tex.App.—El Paso 1993, no pet.) (complaint about prosecutor's non-verbal expressions not apparent from the record).

■ In regard to appellant's second through fifth points of error, we agree with the State that the verdict there is a ministerial duty to enter is the written verdict of the jury. Tex.Code Crim.P.Ann. art. 37.01 (Vernon 1981). Accordingly, we overrule appellant's second through sixth points of error.

### Conclusion

We affirm the judgments of the trial court.