In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00008-CR


______________________________




BARBARA SCHWEITZER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 102nd Judicial District Court


Bowie County, Texas


Trial Court No. 01-F-116-102




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION

 Barbara Schweitzer appeals a conviction for possession of a controlled substance of 400
grams or more. Schweitzer was tried and sentenced by a jury. The jury imposed a sentence of forty
years and a fine of $25,000.00. 

 At approximately 3:00 a.m. on November 3, 2000, Schweitzer was stopped by Officer Johnny
Weaver on Interstate 30 between Summerhill Road and State Line Avenue for allegedly not having
valid tags on her vehicle. The vehicle was displaying temporary tags in the rear window, which
could not be seen from behind the vehicle. Weaver confirmed that Schweitzer's registration on the
car was valid and that there were no outstanding warrants for her arrest. Weaver then issued
Schweitzer a warning citation. 

 Schweitzer told Weaver she traveled to Houston to purchase the vehicle she was driving, a
1995 Hyundai. Weaver then asked Schweitzer if there was anything illegal in the car, and
Schweitzer answered "nothing but me." Weaver testified Schweitzer was overly talkative and polite
and seemed extremely nervous. 

 According to Weaver's testimony, Schweitzer initially told Weaver she traveled from
Saginaw, Michigan, to Houston, Texas, with her boss. Weaver then testified that, when Weaver was
writing the warning citation and asked Schweitzer her occupation, she stated she was unemployed. 
Weaver then asked Schweitzer again how she reached Houston from Michigan, and she responded
she traveled by Greyhound bus. 

 After Weaver had issued Schweitzer the warning citation, he asked if there was anything
illegal in the car, and then subsequently asked for permission to search the car. Schweitzer
consented to the search. Weaver then retrieved his canine partner, who was certified in narcotics. 
The dog alerted by scratching and barking near the right rear panel of the back seat. Weaver noticed
that, in that area of the rear panel, the seat belt was caught underneath the panel. Weaver removed
the panel and found approximately two kilograms of powder cocaine. 

A. Denial of Motion to Suppress Search of Schweitzer's Vehicle

 We review the denial of a motion to suppress by giving considerable deference to the trial
court's determination of historical facts and reviewing de novo the court's application of the law. 
Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); McQuarters v. State, 58 S.W.3d
250, 255 (Tex. App.-Fort Worth 2001, pet. ref'd). When the trial court does not make explicit
findings of fact, we review the evidence in the light most favorable to the trial court's ruling. Id. In
determining whether a trial court's decision is supported by the record, we generally consider only
evidence adduced at the suppression hearing because the ruling was based on it rather than evidence
introduced later. Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). However, this
general rule is not applicable where the suppression issue has been relitigated by the parties during
the trial on the merits. Id. Here, Schweitzer's motion to suppress was heard with the trial on the
merits after the court denied a separate hearing. Therefore, we will consider all of the evidence that
was introduced at the trial on the merits because there was no separate suppression hearing.

 Law enforcement officers may stop and briefly detain persons suspected of criminal activity
if the circumstances on which the officers rely objectively support a reasonable suspicion the person
detained actually is, has been, or soon will be engaged in criminal activity. Woods v. State, 956
S.W.2d 33, 35 (Tex. Crim. App. 1997). Reasonable suspicion exists if the officer has specific
articulable facts that, when combined with rational inferences from those facts, would lead him to
reasonably suspect that a particular person has engaged or is engaging in criminal activity. Garcia
v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). This standard is an objective one; there need
only be an objective basis for the stop. Id. The reasonable suspicion determination is made by
considering the totality of the circumstances. Id. 

 Schweitzer points the court to McQuarters, arguing that the cases are very similar. In
McQuarters, an officer observed the defendant driving at a slow speed in the left lane and crossing
over the center line. McQuarters, 58 S.W.3d at 253. The officer suspected the defendant was
intoxicated and stopped him. Id. The officer then adduced the defendant was not in fact intoxicated,
although the officer testified the defendant appeared nervous. The car driven by the defendant was
rented, and McQuarters was not authorized to drive the car. The officer spoke to both the defendant
and the passenger in the car, and their stories conflicted. The officer then learned the defendant's
driver's license was revoked. The officer then issued a warning to the defendant and told him the
passenger would have to drive because of the revoked license. 

 The officer then asked if there was anything of an "illegal nature" in the car. The defendant
said no; the officer then asked to search the car, and the defendant refused. Id. at 254. At that point,
the officer testified that he "felt like" he had reasonable suspicion there were narcotics in the car, so
he retrieved his narcotics search canine from his patrol car. The dog alerted the officer, and the
officer found approximately ten pounds of marihuana in the trunk. 

 Without a reasonable suspicion that McQuarters possessed narcotics, when the officer gave
the warning citation, it was unreasonable to continue his detention for the canine search. Id. at 257-58.

 While in McQuarters and the present case both defendants were only given warnings for their
traffic violations, there are some pertinent differences that distinguish the present case. The court
in McQuarters cited several other cases with similar facts that had determined there was a proper
basis for the detention. Id. at 257; Martinez v. State, 29 S.W.3d 609 (Tex. App.-Houston [1st Dist.]
2000, pet. ref'd); Simpson v. State, 29 S.W.3d 324 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd);
Zervos v. State, 15 S.W.3d 146 (Tex. App.-Texarkana 2000, pet. ref'd).

 The distinction made was that the detentions in those cases were reasonable because the
officer was in the midst of conducting the investigation for the initial stop when facts developed
justifying reasonable suspicion, whereas in McQuarters, he had completed issuing warnings for the
traffic violations concluding the purpose of the initial stop. McQuarters, 58 S.W.3d at 257.

 Here, the undisputed testimony is the officer knew or became aware during the initial stop
the driver was extremely nervous to the point of talking the "whole time." Schweitzer was driving
alone at 3:00 a.m. from Houston to Michigan. She told the officer she went to Houston from
Saginaw, Michigan, to buy the 1995 Hyundai she was driving. She gave conflicting statements as
to how she traveled to Houston. In the first statement, she indicated her boss took her. After stating
she was unemployed, the officer asked again how she went to Houston and she indicated she traveled
by bus.

 A routine traffic stop resembles an investigative detention. Berkemer v. McCarty, 468 U.S.
420, 439 (1984); Martinez, 29 S.W.3d at 611. Investigative detentions must be reasonably related
in scope to the circumstances that justified the interference in the first place. Davis v. State, 947
S.W.2d 240, 244 (Tex. Crim. App. 1997). To determine the reasonableness of an investigative
detention, we apply the Terry test: (1) whether the officer's action was justified at its inception; and
(2) whether it was reasonably related in scope to the circumstances that justified the initial
interference. See Terry v. Ohio, 392 U.S. 1, 19-20 (1968).

 Under this framework, Weaver's detention of Schweitzer was required to be temporary and
to last no longer than was necessary to determine why Schweitzer was driving with the alleged
inappropriate registration tags. During a traffic stop, an officer has the right to check for outstanding
warrants and request: (1) a driver's license; (2) insurance papers; and (3) identification. Davis, 947
S.W.2d at 245. In addition, an officer may ask about the driver's destination and purpose of traveling
during a valid detention, although neither the driver nor the passenger is required to answer these
questions. Powell v. State, 5 S.W.3d 369, 377 (Tex. App.-Texarkana 1999, pet. ref'd).

 After the initial traffic violation stop, the officer is entitled to rely on all the information
obtained during the course of his contact in developing the articulable facts justifying a continued
investigatory detention. Razo v. State, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.] 1979);
Zervos, 151 S.W.3d at 151; Bustamante v. State, 917 S.W.2d 144, 146 (Tex. App.-Waco 1996, no
pet.). If, during the course of a valid investigative detention, the officer develops a reasonable
suspicion the detainee was engaged in, or soon would engage in criminal activity, a continued
detention is justified. Powell, 5 S.W.3d at 377. In this case, the evidence is undisputed that, during
the initial investigation, the officer observed that Schweitzer was extremely nervous. As previously
mentioned, she gave the officer inconsistent statements concerning her manner and reason for
traveling. The officer has eight and one-half years' experience and has made approximately fifty
drug arrests. He had knowledge that Houston was a high distribution area for cocaine and that
Michigan was a high consumption state. Further, he found it questionable that a female would drive
from Saginaw, Michigan, to Houston, Texas, for the purpose of buying a 1995 Hyundai.

 This Court has considered a very similar fact situation. Zervos, 15 S.W.3d 146. In Zervos,
the officer stopped the defendant for an improper lane change. During the investigation, Zervos was
extremely nervous and gave contradictory statements to the officer. None of the facts were disputed. 
This Court concluded that the facts and circumstances were sufficient for the officer's reasonable
objective suspicion that Zervos was engaged in unlawful activity.

 We conclude the information obtained at the initial investigation and in light of the officer's
experience and prior personal knowledge constituted sufficient articulable facts to justify
Schweitzer's detention.

 This Court held in Zervos, "[e]ven if the officers did not have probable cause to search
Zervos' car, Zervos consented to the search." Id. at 153. Likewise, in this case, Schweitzer
consented to the search.

 The State must meet its burden of establishing by clear and convincing evidence that
Schweitzer's consent to search her vehicle was voluntary. See State v. Hunter, No. 2-01-475-CR,
2003 Tex. App. LEXIS 2392 (Tex. App.-Fort Worth Mar. 30, 2003, no pet. h.). To show the search
was made with the property owner's consent and trigger the consent exception to the warrant
requirement, the State must prove by clear and convincing evidence, based on the totality of the
circumstances, that the defendant gave consent freely and voluntarily. Reasor v. State, 12 S.W.3d
813, 818 (Tex. Crim. App. 2000). 

 In determining whether a defendant's will was overborne in a particular case, trial courts must
assess the totality of the circumstances. Carmouche, 10 S.W.3d at 331. Some relevant factors in
determining the voluntariness issue are the youth of the accused, the education of the accused, the
intelligence of the accused, the constitutional advice given to the accused, the length of the detention,
the repetitiveness of the questioning, and the use of physical punishment. Reasor, 12 S.W.3d at 818;
Hunter, 2003 Tex. App. LEXIS at *11. Testimony by a law enforcement officer that no coercion
was involved in obtaining consent is evidence of the consent's voluntary nature. Martinez v. State,
17 S.W.3d 677, 683 (Tex. Crim. App. 2000). A police officer's failure to inform the accused that
he or she can refuse consent is a factor to consider in determining the voluntariness of consent;
however, the absence of such information does not automatically render the accused's consent
involuntary. Johnson v. State, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002). Nor is consent rendered
involuntary merely because the accused is under arrest. Id. at 653-54. Similarly, consent is not
established by showing no more than acquiescence to a claim of lawful authority. Carmouche, 10
S.W.3d at 331.

 In reviewing the trial court's decision in the present case, to admit the evidence found
pursuant to the search of Schweitzer's vehicle, we must give almost total deference to the trial court's
rulings on (1) questions of historical fact, and (2) application of law to fact questions that turn on an
evaluation of credibility and demeanor. Johnson, 68 S.W.3d at 652-53. In absence of explicit
findings, we assume the trial court made whatever appropriate implicit findings the record supports. 
Carmouche, 10 S.W.3d at 327-28. The voluntariness of consent issue is a mixed question of law
and fact. See Vargas v. State, 18 S.W.3d 247, 253 (Tex. App.-Waco 2000, pet. ref'd). 

 In the present case, the only testimony or evidence concerning the search of Schweitzer's
vehicle is the testimony of Weaver. Weaver testified he asked Schweitzer if there was anything
illegal in her vehicle; after she responded "nothing but me," Weaver then asked for consent to search
the vehicle. At that point, Weaver testified Schweitzer gave him consent to search the vehicle. 
There is no controverting evidence that Schweitzer did not grant Weaver this consent. Reviewing
this with great deference to the trial court's finding that there was valid consent, we find there was
no error. The point of error is overruled.

B. Legal and Factual Sufficiency of Required Mens Rea-Knowingly

 Schweitzer also asserts legal and factual insufficiency, specifically regarding the mens rea
of knowingly. Schweitzer claims there is insufficient evidence she knew the alleged controlled
substance was in the car. 

 In reviewing legal sufficiency, the relevant question is whether any reasonable trier of fact
could have found the essential elements of the crime beyond a reasonable doubt, when viewing the
evidence in the light most favorable to the prosecution. Geesa v. State, 820 S.W.2d 154, 156-57
(Tex. Crim. App. 1991). 

 In reviewing factual sufficiency of the evidence, we review all the evidence and set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Jones v. State, 963 S.W.2d 826, 829-30 (Tex. App.-Texarkana 1998, pet. ref'd). 

 To support a conviction of possession of a controlled substance, the State must show that the
accused exercised actual care, control, or custody of the substance, that he or she was conscious of
his or her connection with it, and that he or she possessed the substance knowingly or intentionally. 
Id. at 830. To show possession, the State could use direct or circumstantial evidence. Lewis v. State,
No. 05-02-01113-CR, 2003 Tex. App. LEXIS 2980, at *7 (Tex. App.-Dallas Apr. 8, 2003, no pet.
h.). However, the State must establish that the accused's connection with the substance was more
than just fortuitous. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); Jones, 963
S.W.2d at 830. 

 Factors to be considered when evaluating affirmative links include: 1) the defendant's
presence when the search was executed; 2) whether the contraband was in plain view; 3) the
defendant's proximity to and the accessibility of the contraband; 4) whether the defendant was under
the influence of a controlled substance when arrested; 5) whether the defendant possessed other
contraband when arrested; 6) whether the defendant made incriminating statements when arrested;
7) whether the defendant attempted to flee; 8) whether the defendant made furtive gestures;
9) whether there was an odor of the contraband; 10) whether other contraband or drug paraphernalia
was present; 11) whether the defendant owned or had the right to possess the place where the drugs
were found; and 12) whether the place the drugs were found was enclosed. Jones, 963 S.W.2d at
830.

 Although the defendant must be affirmatively linked to the contraband, this link need not be
so strong as to exclude every other reasonable hypothesis except the defendant's guilt. Id.; Brown,
911 S.W.2d at 748. The affirmative link ordinarily emerges from an orchestration of several factors
and the logical force they have in combination. Jones, 963 S.W.2d at 830. Mere possession of a
vehicle in which contraband is found, without additional facts and circumstances connecting the
accused to the contraband, will not support a conviction for possession. Id.; Hernandez v. State, 867
S.W.2d 900, 904 (Tex. App.-Texarkana 1993, no pet.). 

 In the present case, Schweitzer was the sole occupant of the vehicle. Officer Weaver testified
she appeared nervous. Schweitzer gave inconsistent statements concerning her reason and manner
of travel. Schweitzer told Weaver she paid $2,000.00 or $3,000.00 for the vehicle. The cocaine
found in the car was two kilograms of eighty-one percent pure cocaine, which could be worth
approximately $800,000.00 on the street. Houston is considered by law enforcement officers to be
a high-distribution area for narcotics and Michigan is considered to be a high-consumption state of
narcotics. The inside of Schweitzer's car showed signs of tampering near the area where the
narcotics were found (the back seat shoulder strap was caught behind the side panel, and the
narcotics were found hidden behind the side panel). A screwdriver was also found in the back seat. 
When Weaver asked about the screwdriver, Schweitzer replied, "You never know when you're going
to need one," which could be construed as indicating ownership of the tool. 

 Reviewing the legal sufficiency, in light of the surrounding facts, and viewing all the
evidence in the light most favorable to the State, a rational trier of fact could have found that
Schweitzer knowingly was in possession of the narcotics. The point of error concerning legal
sufficiency is therefore overruled. 

 Reviewing the factual sufficiency, viewing all of the evidence, the verdict is not so contrary
to the great weight of the evidence as to make the verdict unjust. This point of error is overruled. 

C. Admitting Evidence after Charge to Jury was Read

 Finally, Schweitzer alleges the trial court erred when it denied her motion for directed verdict
and overruled her objection to the State re-opening its case once the trial judge had begun reading
the charge to the jury. We treat a point of error complaining about a trial court's failure to grant a
motion for directed verdict as a challenge to the legal sufficiency of the evidence. Evidence is
legally sufficient when, viewed in the light most favorable to the verdict, a rational jury could have
found the essential elements of the offense beyond a reasonable doubt. This Court's duty is not to
reweigh the evidence from reading a cold record, but to "position itself as a final, due process
safeguard ensuring only the rationality of the factfinder." Williams v. State, 937 S.W.2d 479, 483
(Tex. Crim. App. 1996). After reviewing the evidence in the light most favorable to the verdict, as
further discussed below, we find that a rational jury could have found the essential elements of the
offense of possession of a controlled substance beyond a reasonable doubt. 

 The trial court may, in its discretion, admit evidence at any time before argument closes, and
such discretion will be reversed only when abused. Perry v. State, 464 S.W.2d 660, 662 (Tex. Crim.
App. 1971). This rule is illustrated in Article 36.02 of the Texas Code of Criminal Procedure, which
states 

 The court shall allow testimony to be introduced at any time before the
argument of a cause is concluded, if it appears that it is necessary to a due
administration of justice.

Tex. Code Crim. Proc. Ann. art. 36.02 (Vernon 1981). The rule is specific to testimony; however,
given the Texas Court of Criminal Appeals opinion in Perry and the general purpose behind Article
36.02, we find that a trial court may admit any relevant evidence at any time before the parties have
given their closing argument. See Perry, 464 S.W.2d at 662; see also Tex. Code Crim. Proc. Ann.
art. 36.02.

 In the present case, the trial court was in the process of reading the charge to the jury when
the State moved to re-open the case and admit additional evidence. The trial judge admitted the
State's additional evidence and continued reading the charge to the jury in paragraph four, where he
was previously interrupted. It was in the discretion of the trial judge to admit evidence at any time
before the final arguments of the parties. See Perry, 464 S.W.2d at 662; see also Tex. Code Crim.
Proc. Ann. art. 36.02. Final arguments to the jury had not been made at the time when the charge
was being read to the jury; final arguments did not proceed until after the trial court completed
reading the charge to the jury. Thus, the trial judge was within his discretion to allow the State to
interrupt the reading of the charge and admit further evidence into the record. This point of error is
therefore overruled. 

 There was no error in denying the motion to suppress because there was sufficient consent
to search the vehicle. The evidence was also legally and factually sufficient to sustain the conviction
because there is enough circumstantial evidence of Schweitzer's knowledge of the narcotics. Finally,
the trial court did not err when it allowed the State to re-open the case, once the judge had already
begun reading the charge to the jury, because final arguments had not yet been given. We affirm the
judgment.



 Jack Carter

 Justice


Date Submitted: May 6, 2003

Date Decided: May 7, 2003


Do Not Publish