Opinion issued October 6, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00821-CR, 

NO. 01-10-00822-CR

———————————

Nathaniel Jones, III, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 228th District Court 

Harris County, Texas



Trial Court Case Nos. 1267896 and 1267897

 



 

MEMORANDUM OPINION

A jury convicted Nathaniel Jones, III of murder and
aggravated assault and sentenced him to 45 years’ confinement for each
conviction. Jones raises two issues on appeal: (1) whether the trial court
erred by denying his trial counsel’s motion to withdraw based on a potential
conflict of interests and (2) whether the trial court erred in refusing to
allow him to poll the jury after the guilt phase of the trial. We conclude that
Jones has not demonstrated any actual conflict of interest between himself and
his trial counsel and that he has not demonstrated any harm from the trial
court’s denial of his request to poll the jury on their guilty verdicts. We
therefore affirm.

Background

The State maintains that Jones was
involved in a check fraud scheme with Timothy Lee and Earnest Green.  Jones fabricated an employment identification
card that was to be used in cashing a stolen check. Lee agreed to pay Jones $400
for the falsified identification card. Lee paid Jones $200, but still owed him $200.
On November 24, 2008, Jones went to a garage warehouse where Lee and Green were
having a few beers with William Marshall and Brent Powell. When Jones arrived,
Lee went out to the parking lot to meet him. Jones and Lee had a heated
discussion about the money Lee owed Jones. Marshall and Green then went out to the
parking lot to try to break up the argument. Jones pulled out a gun and shot
Lee. Lee turned to run, and Jones continued shooting. One of the additional
shots hit Lee, and another one hit Marshall. Jones picked up the ejected shell
casings and fled the scene. Lee suffered serious injuries, including an open
fracture to his skull, nose bones, and long arm bone. Marshall died.

The State maintains that Jones, in violation of his probation
from prior offenses, fled to Louisiana. He was eventually arrested there and
brought back to Texas. In Texas, he was indicted for murder and aggravated
assault. He pled not guilty. The trial court appointed Kyle Johnson to
represent Jones. A few weeks before trial, Johnson filed a motion to withdraw,
stating that Jones had filed a legal malpractice action against him based on
Johnson’s representation of Jones in a previous criminal matter. Johnson contended
that this created a conflict of interest under Rule 3.08 of the Texas
Disciplinary Rules of Professional Conduct and that withdrawal was required by
Rule 1.15(a)(1). See Tex.
Disciplinary R. Prof’l Conduct 1.15, 3.08, reprinted in Tex. Gov’t Code Ann., tit. 2,
subtit. G app. A (West 2005) (Tex. State Bar R. art. X, § 9). At the pretrial
hearing on the motion to withdraw, Jones also requested that he be appointed new counsel. The trial
court denied Johnson’s motion to withdraw and Jones’s request for appointment
of a new attorney. 

A jury found Jones guilty of murdering Marshall and committing
aggravated assault against Lee. The trial judge read the jury’s verdict aloud.
No juror dissented or otherwise voiced disagreement with the verdict. After the
judge sent the jury back to the jury room, Johnson requested that the jury be
polled. He stated: 

I’ve had a few minutes to think about what’s been
going on this week and about how it seemed like [the jury was] locked up. And
it occurs to me I probably should have asked on the spot to have them polled.
They’ve only been out of the courtroom minutes. And I would request at this
time that the jury come back in and be polled as to their verdict. Because I’m
a little concerned that maybe some people cratered and aren’t comfortable with
their verdict.

 

The
trial judge denied the request as untimely. He then brought the jury back in
and dismissed them until the following Monday, when they would return for the
punishment phase of the trial. After the jury was dismissed, Johnson renewed
his request to poll the jury, stating that one of the jurors appeared to be
crying as she left and he was concerned that she was not comfortable with the
verdict. The trial court again denied the request.

Jones pled true to two enhancement paragraphs based on prior
felony convictions. They jury assessed punishment at 45 years for murder and 45
years for aggravated assault. Johnson requested the jury be polled regarding
their punishment verdicts. The court granted the request and polled the jurors on
their punishment verdicts.  All twelve
jurors indicated that the two punishment verdicts were their verdicts. 

Ineffective Assistance
of Counsel

In his first issue, Jones contends
that the trial court erred when it denied his trial attorney’s motion to
withdraw. Jones asserts that, as a result, he did not receive effective, conflict-free
representation at trial. Jones does not disclose the nature of the alleged
conflict or identify any manner in which the alleged conflict adversely affected
his representation. 

A.      Standard of Review for Motion to Withdraw

An attorney
may not withdraw without the permission of the trial court. Ward v. State, 740 S.W.2d 794, 797 (Tex.
Crim. App. 1987). The decision whether to permit counsel to withdraw is within
the trial court’s sound discretion. Green
v. State, 840 S.W.2d 394, 408 (Tex. Crim. App. 1992), cert. denied, 507 U.S. 1020, 113 S. Ct. 1819 (1993). A court of
appeals will not disturb that decision absent an abuse of discretion. See id. 

B.      Conflict-Free Assistance of Counsel

The Sixth
Amendment of the United States Constitution guarantees Jones the right to
reasonably effective, conflict-free assistance of counsel. Strickland v. Washington, 466
U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984);
Cuyler v. Sullivan, 446 U.S. 335, 344–45,100
S. Ct. 1708, 1716–17 (1980). But Jones does not have the right to his choice of court-appointed
counsel: if he seeks court-appointed representation, he must accept the
attorney selected by the court unless he can show adequate reason for the
appointment of new counsel. McKinny v. State, 76 S.W.3d 463, 477 (Tex.
App.—Houston [1st Dist.] 2002, no pet.) (citing Garner v. State, 864 S.W.2d 92, 98 (Tex. App.—Houston [1st Dist.]
1993, pet. ref’d)). A trial court is under no duty to search until it finds an
attorney agreeable to the defendant. Id. When there is an adequate
reason for the appointment of new counsel, the defendant must bring the matter
to the trial court’s attention and carry his burden of proving that he is
entitled to new counsel. Id. 

The parties
agree that Jones’s first issue is governed by the standard set forth by the United
States Supreme Court in Cuyler v. Sullivan. Under the Sullivan standard, a criminal defendant asserting that he did not
receive effective assistance of counsel due to a conflict of interest must show
that (1) counsel “actively
represented conflicting interests” and (2) counsel’s performance at trial was
“adversely affected” by the conflict of interest. Sullivan, 446 U.S. at 349–50,
100 S. Ct. at 1719; Acosta v.
State, 233 S.W.3d 349, 352–53 (Tex. Crim. App. 2007). The mere possibility of conflict is
not sufficient to impugn a jury’s conviction; instead, a defendant must
establish an actual conflict. Sullivan, 446 U.S.
at 350, 100 S. Ct. 1719. Once
the defendant shows an actual conflict and that the conflict adversely affected
the adequacy of his representation, the defendant need not demonstrate
prejudice. Sullivan, 446 U.S.
at 349–50, 100 S. Ct. 1719; Acosta,
233 S.W.3d  at 353.

          1.       Actual Conflict of Interest

An actual conflict of interest exists “if counsel is
required to make a choice between advancing his client’s interest in a fair
trial or advancing other interests (perhaps counsel’s own) to the detriment of
his client’s interest.”  Acosta, 233 S.W.3d at 355 (quoting Monreal v. State, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997)). When a criminal defendant files a grievance or other legal
proceeding against his court-appointed counsel, it does not necessarily give
rise to an actual conflict of interest, even though the defendant and his
counsel may be adversaries in other legal proceedings. See Dunn v. State, 819 S.W.2d 510, 519 (Tex. Crim.
App. 1991) (rejecting defendant’s conflict of interest claim based on
defendant’s malpractice action against attorneys); Perry v. State, 464 S.W.2d 660, 664 (Tex. Crim. App.
1971) (holding that defendant did not establish actual conflict of interest
based on civil rights action against attorney); McKinny, 76 S.W.3d at
477–78 (holding that defendant did not establish actual conflict of interest or
adverse affect when defendant filed grievance against counsel); see also Garner, 864 S.W.2d  at 99 (holding that defendant did not
establish actual conflict in prosecution with respect to which defendant claimed
to have filed complaint with bar association). Courts of appeals have been
weary of the possibility of defendants filing lawsuits and grievances to delay
legal proceedings or force a change of counsel. Perry, 464 S.W.2d at 664 (“[I]f appellant’s contention were upheld,
a defendant could effectively delay or prevent an appeal (or trial) by filing a
civil suit against his appointed counsel.”).

To establish a conflict of interest, Jones relies exclusively
on the civil action he filed against Johnson based on Johnson’s representation
of Jones in an unrelated prosecution for theft. But Jones’s civil suit against
Johnson does not create a per se actual
conflict. See Dunn, 819 S.W.2d at 519; Perry, 464 S.W.2d at 664; McKinny,
76 S.W.3d at 477–78. Instead, Jones has the burden of establishing the
existence of an actual conflict between Johnson’s interest in the civil action
and Jones’s interest in his murder and assault prosecution. See Dunn, 819 S.W.2d at 519; Perry, 464 S.W.2d at 664; McKinny,
76 S.W.3d at 477–78. Jones fails to meet that burden. He does not identify any
instance in which he claims Johnson was “required to make a choice between
advancing [Jones’s] interest in a fair trial or advancing [Johnson’s own interest
in the civil litigation] to the detriment of [Jones’s] interest.”  Acosta,
233 S.W.3d at 355. Moreover, our review of the record has not revealed any such
instance. Johnson filed
pretrial motions, cross-examined each of the State’s witnesses, presented
testimony from Jones regarding his version of events, and at the punishment
phase, offered a statement as to why Jones’s punishments should be on the lower
end of the statutorily-defined punishment ranges. Johnson’s defense of Jones on
the basis of self-defense resulted in jury deliberations that spanned three
days and included numerous questions and requests to have testimony read back. 

Jones’s only citation to the record in support of his
conflict assertion is to Johnson’s motion to withdraw, in which Johnson states
that there is a conflict of interest under Rule 3.08 of the Texas Disciplinary Rules
because Johnson could be called to give testimony adverse to Jones in the civil
action. Rule 3.08 governs situations when an attorney in a case is or becomes a
material witness in the case. See Tex.
Disciplinary R. Prof’l Conduct
3.08, reprinted in Tex. Gov’t Code Ann., tit. 2, Subtit. G,
app. A (West 2005). Under Rule 3.08(b), an attorney may not continue to
represent a client when the attorney believes the he will be compelled to
furnish testimony that will be substantially adverse to the client, unless the
client gives informed consent. Id. Rule
3.08 applies to a situation when an attorney provides testimony in a case in
which he also acts as an advocate. See,
e.g., Powers v. State, 165 S.W.3d 357, 359 (Tex. Crim. App. 2005); Gonzalez
v. State, 117 S.W.3d 831, 841 (Tex. Crim. App. 2003).  The rule addresses two concerns that arise
when an attorney becomes a likely witness in a proceeding in which he
represents a client: (1) the client’s case may be harmed by counsel assuming
the dual roles of advocate and witness and (2) jury confusion may arise when an
attorney in the case testifies. Gonzalez
v. State, 63 S.W.3d 865, 876 (Tex. App.—Houston [14th Dist.] 2001), aff’d, 117 S.W.3d at 843; see also Powers,
165 S.W.3d at 359.

Jones does not assert, or cite any authority for the
proposition, that Rule 3.08 is implicated when an attorney may be called as a
witness in another, unrelated proceeding in which the client is a party. Nor
does Jones identify any harm that might result from Johnson’s role as a potential
witness in the civil proceeding and an advocate in this separate criminal
matter. Because Johnson was only an advocate and not a witness in this matter,
there was no risk of the prejudice or jury confusion that may arise when an
attorney plays the dual roles of advocate and witness in a single proceeding. Cf. Powers, 165 S.W.3d at 359; Gonzalez, 117 S.W.3d at 843. The harms
against which Rule 3.08 protects are not threatened here.

We therefore conclude that Jones has not established that
Johnson actually represented conflicting interests, a “constitutional
predicate” for asserting ineffective assistance of counsel on the basis of an
alleged conflict of interests. See Sullivan,
446 U.S. at 350, 100 S. Ct. 1719; see
also McKinny, 76 S.W.3d at 478.

2.       Inquiry by the
Trial Court

Jones also asserts that the trial
court failed to make an adequate inquiry into the potential conflict created by
Jones’s lawsuit against Johnson. When a criminal defendant brings a potential conflict of
interest to the attention of the trial court, the trial court has an obligation
to investigate and determine whether the risk of the conflict of interest warrants
remedial action. Holloway v. Arkansas, 435 U.S. 475, 484, 98 S. Ct. 1173, 1179 (1978) (addressing
potential conflict created by joint representation of three codefendants); Dunn, 819 S.W.2d at 519 (extending Holloway beyond multiple
representations). The
failure to conduct such an inquiry, when necessary, is reversible error if the
defendant establishes that the conflict of interest adversely affected his
counsel’s performance. Mickens v. Taylor,
535 U.S. 162, 173–74, 122 S. Ct. 1237, 1244–45 (2002); see also Routier v. State, 112 S.W.3d 554, 582 (Tex. Crim. App.
2003). 

The trial court had actual knowledge of the alleged conflict
of interest between Johnson and Jones because of Johnsons’ motion to withdraw. The
trial court conducted a very
brief hearing on Johnson’s motion to withdraw, during which Jones also
individually requested appointment of new counsel. But neither Jones nor
Johnson raised any new or additional arguments or evidence at the hearing beyond
that put forth in Johnson’s two-page motion for withdrawal. 

We have already concluded that the evidence and argument
advanced here and before the trial court do not establish the existence of an
actual conflict of interest. Johnson and Jones had an opportunity to present
additional evidence or argument at their pretrial hearing. Jones does not
contend that he was prevented from doing so. Nor does Jones identify on appeal
any additional evidence of conflict that the trial court could have discovered
upon further investigation. We therefore conclude that the trial court did not
commit reversible error in failing to take further action with respect to the
alleged potential conflict created by Jones’s civil action against Johnson. See Dunn, 819 S.W.2d at 520 (observing
that, despite defendant’s many objections to appointed counsel, he “never made
any claim that there existed a conflict of interest which actually affected the
adequacy of his representation by [his court-appointed counsel].”). 

We overrule Jones’s first issue.

Failure to Poll the
Jury After Guilt Phase

In his second
issue, Jones argues that the trial court erred when it refused to poll the jury
shortly after its verdict in the guilt phase of the trial. Jones asserts that the
trial court’s denial of his request to poll the jury caused him some
unspecified harm, such that his conviction should be overturned.

A.      Polling the Jury

Article 37.04 of the Texas Code
of Criminal Procedure provides for the reading and entry of the jury’s verdict
by the trial court. Tex. Code Crim. Proc.
Ann. art. 37.04 (West 2006). Under article 37.04, the verdict is entered
into the minutes of the court if it is in proper form, no juror dissents, and
neither party requests a poll of the jury. 
Id.  Article 37.05 establishes the parties’ right
to have the jury polled and governs the process for entry of the jury’s verdict
when a poll is conducted. Id. art.
37.05 (West 2006). Under article 37.05, each juror is asked if the verdict is
his or her verdict. Id. If each juror
answers affirmatively, then the verdict is entered into the minutes of the
court. Id. If a juror answers in the
negative, the jury must retire again to consider its verdict. Id. 

The purpose of the jury poll is to
ensure the unanimity of the jury verdict by establishing that each juror agrees
with the verdict as announced. See
Andrews v. State, No. 05-92-00411, 1993 WL 19931, at *3 (Tex. App.—Dallas
Jan. 29, 1993, no pet.) (not designated for publication); see
also Humphries v. Dist. of Columbia, 174 U.S. 190, 194, 19 S. Ct. 637, 638–39 (1899) (stating
that object of jury poll is “to ascertain for a certainty that each of the
jurors approves of the verdict as returned; that no one has been coerced or
induced to sign a verdict to which he does not fully assent.”). Although
article 37.05 endows a criminal defendant with “the right to have the jury polled,”
Tex.
Code Crim. Proc. art.
37.05, that right is waived
if the defendant fails to properly request the poll. Mathis v. State, 471 S.W.2d 396, 398 (Tex. Crim. App. 1971). 

Article 37.05 does not provide a deadline for such a
request, but our law establishes that a jury should not be reassembled after
“their identity as an organized body ha[s] ceased.”  Perryman v. State, 102 Tex. Crim. 531,
533–34, 278 S.W. 439, 440 (Tex. Crim. App. 1925). “To give a verdict the
vitality that will authorize the imprisonment of
an individual, it is essential that it be by a jury selected and impaneled
under the forms of law, and that the verdict be rendered before the jury is
dissolved.” Id. The Court of Criminal
Appeals has held that the trial court may recall the jury to correct their
verdict if the jury “has not separated or have only momentarily separated and
are still in the presence of the court and it appears that no one has talked to
the jurors about the case.” Webber v.
State, 652 S.W.2d 781, 782 (Tex. Crim. App. 1983).  This court has held that, when a jury was
discharged and had been separated over night, it would have been improper for
the trial court to recall the jurors for a jury poll requested by the
defendant. Phan v. State, No. 01-96-01228-CR, 2000 WL 730655, at *3
(Tex. App.—Houston [1st Dist.] June 8, 2000, no pet.) (not designated for
publication).

Here, the jury was not dissolved, and retained its unity of
identity as a jury. Although the jurors had completed the guilt-innocence phase
of the trial, they retained their identity as a jury for the punishment phase
of the trial. At the time of Johnson’s first request to poll the jury, the
record indicates that the jurors had been out of the court room for only a
short time and had been sent together to the jury room. When the judge sent the
jury to the jury room, he stated that further instructions would follow. He did
not expressly release the jury from any of the instructions that they had been
given with respect to the deliberative process. The trial judge stated on the
record that he went to the jury room and admonished the jurors not to talk
about the case and that they were still in trial.[1]
He stated that they indicated that “they understood my instructions, the same
instructions I have been giving all week.” Under these circumstances, we
conclude that Johnson’s request to poll the jury was not so untimely as to
waive Jones’s “right to have the jury polled” under article 37.05. Tex. Code
Crim. Proc. art. 37.05. The trial court
therefore erred in denying the request to poll the jury.

A.              
Harmless Error 

Having determined that the trial court erred in denying Jones’s
request to poll the jury, we must now consider whether the error requires
reversal. The state contends that the trial court’s error in failing to poll
the jury is non-constitutional error, which entitles Jones to reversal only if
he meets his burden of demonstrating harm. See
Tex. R. App. P. 44.2(b).
Jones does not argue that a failure to poll the jury is constitutional error or
that he need not show harm. Instead, he asserts in a single sentence that he
“was harmed by [the trial court’s] denial [of his request to poll the jury] and
his conviction should be overturned.” But Jones provides no specific allegations,
authority, or citations to the record to support this contention. Thus, we must
determine whether the denial of a request to poll the jury is constitutional or
non-constitutional error. If it is non-constitutional error for which Jones
must demonstrate harm, he has not satisfied that burden. See id.

We agree with the State that the denial of the right to poll
the jury is not constitutional error. Within the meaning of rule 44.2(a),
constitutional error is an error that directly offends the United States Constitution
or the Texas Constitution, without regard to any statute or rule that might
also apply.  Thompson v. State, 95 S.W.3d 537 (Tex. App. —Houston [1st Dist.]
2002, no pet.). “That is, an error is constitutional only if the correct ruling
was constitutionally required.” Id. Although
the constitution guarantees Jones the right to conviction by a unanimous jury, Ngo v. State, 175 S.W.3d 738, 744 (Tex.
Crim. App. 2005), the jury-polling process in article 37.05 merely provides a
procedural means of verifying that right. Jones has not identified any
constitutional provision that would require polling of the jury, and jury
polling is not the only means by which the jury’s unanimity can be tested. See, e.g., Thomley v. State,
987 S.W.2d 906, 911 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d) (observing
that defendant with reason to believe jury’s verdict is not unanimous “could
have conducted his own polling of the jury” through juror testimony upon motion
for new trial).

In Thomley, we
held that the criminal defendant’s request to poll the jury the day after the reading
of the verdict was timely under the “peculiar circumstances” of the case but
that the trial court’s error in denying the request did not require reversal
because the defendant failed to show that he was harmed by the error. Thomley, 987 S.W.2d at 911. We observed
that, “if there were any substance to appellant’s complaint, he could have
preserved it by filing a motion for new trial. A motion for new trial is
necessary to adduce facts of a matter not otherwise shown on the record.” Id. “In a motion for new trial,
appellant could have brought jurors to testify what their verdict was.
Appellant could have conducted his own polling of the jury. This is the only
way we could determine whether any harm resulted from the trial court’s
misreading of the verdicts.” Id. Here
too, if Jones had serious concern about the unanimity of the jury’s verdict,
those doubts could have been dispelled or substantiated through a motion for
new trial.[2]
But in the absence of any basis for concluding that Jones was harmed by the
trial court’s denial of his request to poll the jury after the guilt phase of
his trial, we cannot reverse his convictions. See Tex. R. App. P. 44.2(b).


Appellant’s second issue is overruled.

Conclusion

We affirm the judgment of the trial court.

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Justices Jennings, Sharp, and Brown.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]
          It
is not clear from the record whether this occurred before or after Johnson’s
first request to poll the jury.





[2]
          It is worth noting that the jury
was polled during the punishment phase of the trial, and each juror answered
affirmatively to the forty-five-year sentences imposed for each of Jones’s
convictions. It is possible that the jury’s demeanor during the punishment
phase and subsequent polling quelled any concerns Johnson had about the
individual jurors’ agreement with the guilty verdicts.