In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00183-CR

                                                ______________________________

 

 

                                      JAMES DAVID TUTT,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 145th
Judicial District Court

                                                       Nacogdoches
County, Texas

                                                         Trial Court
No. F1017524

 

                                                 
                                                 

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

            James
David Tutt appeals his conviction for one count of possession of a controlled
substance and one count of felony DWI, enhanced by two prior felonies.[1]  Tutt complains his lawyer was ineffective,
the trial court erred in denying his continuance motion, in failing to conduct
a hearing on his lawyer’s performance, and in allowing Tutt to represent
himself.  We affirm the judgment of the
trial court.

I.          Facts and Trial Procedure

            Sergeant
Robert Mobley, a patrol sergeant with the Nacogdoches Police Department,
observed a vehicle being driven by Tutt fail to dim its high-beam
headlights.  Mobley initiated a traffic
stop.  During the investigation of the
traffic offense, Mobley observed Tutt’s speech was slurred,[2]
detected the odor of alcohol coming from the inside of the vehicle, and
observed that Tutt had glazed and bloodshot eyes.  The passenger in the vehicle had an open can
of Keystone Light beer.  Tutt informed
Mobley he had consumed one beer.  While
conversing with Tutt, Mobley detected the odor of alcohol on Tutt’s breath.  Mobley testified Tutt’s performance on
several field sobriety tests indicated he was intoxicated.  After arresting Tutt, Mobley conducted a
search of Tutt’s person and discovered, in Tutt’s front left pants pocket, a
baggie containing a substance eventually determined to be cocaine.  Tutt initially consented to give a breath
sample and provided one breath sample. 
When requested to give a second breath sample,[3] Tutt
refused.  

            On
the day of trial, Tutt filed a motion to dismiss his court-appointed counsel
and requested a continuance to hire an attorney.  Tutt alleged his court-appointed attorney had
failed to properly investigate and had refused to file a motion which Tutt had
requested be filed.  The trial court
refused to grant a continuance and informed Tutt that he could either proceed
with his current court-appointed counsel or represent himself.  The trial court strongly and repeatedly
recommended that Tutt proceed with his court-appointed counsel.  After being admonished by the trial court,
Tutt orally elected to represent himself. 
Tutt also signed a written waiver of his right to counsel, but added the
notation “need time for att.”  The jury
found Tutt guilty on both counts, and Tutt was sentenced to forty years’
imprisonment for the felony DWI count and twenty years’ imprisonment for the
possession of a controlled substance count. 
On appeal, Tutt raises eight issues.[4]  Finding no merit to these issues, we affirm.

II.        Effective Assistance of
Counsel 

            In
his first issue, Tutt complains his appointed trial counsel failed to render
effective assistance of counsel prior to the commencement of trial.  Specifically, Tutt alleges his appointed
trial counsel 

failed to (a) interview witnesses at the scene, as
well as witnesses prior to the incident who would attest to Defendant’s
non-drinking status; (b) conduct discovery of the State’s case; (c) investigate
the breathalyzer, workings and/or malfunctions; (d) examine/investigate
Defendant’s defense of false positive as caused by energy drinks; (e) failed to
obtain any medical records to determine intoxication and/or alcohol impairment
from the point where the Appellant was taken to emergency for treatment of
physical injuries; and/or (f) failed to meet, discuss and communicate with his
client.

 

            We
evaluate the effectiveness of counsel under the standard enunciated in Strickland
v. Washington, 466 U.S. 668 (1984).  See
Hernandez v. State, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986).  To prevail on his claim, Tutt must show (1)
his appointed trial counsel’s performance fell below an objective standard of
reasonableness, and (2) a reasonable probability exists that, but for trial
counsel’s errors, the result would have been different.  See Strickland, 466 U.S. at 687–88.  “A reasonable probability is a probability
sufficient to undermine confidence in the outcome.”  Mallett
v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).  An appellant has the burden of proving
ineffective assistance of counsel by a preponderance of the evidence.  Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999).

            Tutt,
though, has failed to direct this Court to any portion of the record of
evidence that Tutt’s appointed trial counsel failed to interview witnesses or
otherwise investigate the State’s allegations.[5]  “It is well-settled that any claim of
ineffective assistance must be firmly founded in the record.”  Flowers
v. State, 133 S.W.3d 853, 857 (Tex. App.––Beaumont 2004, no pet.); see Thompson, 9 S.W.3d at 813.  We will not presume, as requested by Tutt,
that his appointed trial counsel’s performance was deficient.  “The review of defense counsel’s
representation is highly deferential and presumes that counsel’s actions
fell within a wide range of reasonable professional assistance.”  Mallett,
65 S.W.3d at 63.  We must presume, in the
absence of contrary evidence, that trial counsel’s performance was not
deficient.

            The failure to seek out and interview potential witnesses may be ineffective assistance of counsel when
the inaction precludes the accused from advancing a viable defense.  See Ex parte Duffy, 607 S.W.2d 507, 517
(Tex. Crim. App. 1980), overruled on other grounds by Hernandez v.
State, 988 S.W.2d 770 (Tex. Crim. App. 1999); State v. Thomas, 768
S.W.2d 335 (Tex. App.—Houston [14th Dist.] 1989, no pet.).  Tutt claims

the failure to investigate precluded the following
from coming forward:  (1) Pastor C. L.
King, Bethel Temple Church of God, Martin Luther King Street, Nacogdoches, Texas
and Kenneth Sweat, 1526 Looneyville, Nacogdoches, Texas who would have
testified that he did not observe Appellant drinking on the day Appellant was
arrested, that Appellant had quit drinking and drank energy drinks; (2) in
addition to the two witnesses identified, the following were witnesses who were
made known to Mr. Caldwell, but were not contacted by him:  Stacy Roberts (Sweat’s Cousin), Rickey Hooker
– friend of the family, and Rodrick Duffy – father to Appellant’s grandchild;
(4) failure to subpoena from hospital records of treatment that evening – to
determine (a) alcohol content and/or (b) intoxication/impairment; and (3)
proper investigation would have revealed that consumption of energy drinks has
been known to distort breathalyzer results. 


 

            We
note that Kenneth Sweat, named above as a witness precluded “from coming
forward,” did testify at trial.  Tutt has
failed to direct this Court to where in the record there is evidence the
remaining potential witnesses were available to testify and evidence that their
testimony would have benefitted the defense. 
To obtain relief on an ineffective
assistance of counsel claim based on uncalled witnesses, the applicant must
show that the witnesses were available to testify and that their testimony
would have been of some benefit to the defense.  Ex parte White, 160 S.W.3d 46, 52
(Tex. Crim. App. 2004).  We will not
presume witnesses were available and would have benefitted the defense.  

            Tutt
also claims his appointed trial counsel failed to ensure his client’s decisions
were based on correct information as to the applicable law.  One of Tutt’s complaints about his appointed
trial counsel was that counsel refused to challenge as too remote Tutt’s prior DWI
convictions, which enhanced the offense to a felony.  When Tutt raised the issue, Tutt’s appointed
trial counsel, who has a duty of candor to the court, informed the trial court that
the law relied upon by Tutt “was repealed by the legislature.”[6]  This statement indicates Tutt’s appointed
trial counsel was aware of Tutt’s complaints and had obviously communicated
with Tutt.  An attorney cannot be found
deficient because a client refuses to believe his or her legal advice.  The record does not demonstrate Tutt’s
appointed trial counsel failed to communicate with Tutt.  The first prong of Strickland has not been satisfied. 
In the absence of evidence to the contrary, we must presume counsel’s
performance fell within the range of reasonable professional assistance.

            In
addition to failing to satisfy the first prong of Strickland, Tutt has made no effort to show this Court that he
suffered any prejudice as a direct result of any of the above-referenced
alleged deficiencies.  Tutt has wholly
failed to satisfy the second prong of Strickland.  The record before us has been inadequately
developed.  For these reasons, we
overrule Tutt’s first point of error.

III.       The Motion for
Continuance

            Tutt
argues, in his second issue, that the trial court abused its discretion in
denying his motion for continuance to obtain retained counsel.  On the day set for trial, Tutt requested a
continuance orally and in a written, but unsworn, “motion to dismiss” his
appointed trial counsel.  

            A
motion for continuance must be written and “sworn to by a person having
personal knowledge of the facts relied on for the continuance.”  Tex.
Code Crim. Proc. Ann. art. 29.08 (Vernon 2006).  The Texas Court of Criminal Appeals has held
that the statutes require a sworn motion to preserve appellate review from a
trial court’s denial of a motion for a continuance.  Anderson
v. State, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009).  By failing to file a sworn written motion for
continuance, Tutt forfeited his right to complain about the trial court’s
ruling and we have nothing to review.  The
second issue is overruled. 

IV.       Duty to Conduct a
Hearing 

            In
his third and fourth points of error, Tutt contends the trial court erred in
failing to hold a formal evidentiary hearing when Tutt alleged his appointed
trial counsel failed to adequately investigate the State’s allegations.  Tutt alleged the trial court improperly
presumed trial counsel acted appropriately. 
The State responds that these issues are inadequately briefed.

            We
first note that Tutt never requested a formal evidentiary hearing to inquire
into his appointed trial counsel’s performance. 
We also note the record does not contain any evidence Tutt’s appointed
trial counsel failed to investigate the State’s allegations.  Thus, the issue in this case is whether the
trial court was required to hold a formal evidentiary hearing sua sponte based on the mere allegations of a
dissatisfied client.  Tutt has failed to
provide this Court with any relevant authority that the trial court had a sua
sponte duty to hold a formal evidentiary hearing.  Tutt failed to cite any authority in his appellant’s
brief to support his argument.  In his
reply brief, Tutt cites the following cases: 
Burgess v. State, 816 S.W.2d
424, 429 (Tex. Crim. App. 1991); Renfro
v. State, 586 S.W.2d 496, 498 (Tex. Crim. App. [Panel Op.] 1979); Robles v. State, 577 S.W.2d 699 (Tex.
Crim. App. [Panel Op.] 1979); Thomas v.
State, 550 S.W.2d 64 (Tex. Crim. App. 1977); Privett v. State, 635 S.W.2d 746 (Tex. App.—Houston [1st Dist.]
1982, pet. ref’d).  None of these cases
hold, as alleged by Tutt, that the trial court is required to hold a formal
evidentiary hearing on the appointed counsel’s efforts to investigate the
State’s allegations.[7]  We are not aware of any authority imposing
such a duty on the trial court.[8]

            Tutt
is obligated to provide this Court with “appropriate citations to
authority.”  See Tex. R. App. P.
38.1(i).  As such, this issue has been
inadequately briefed.  We may overrule
any inadequately briefed point of error. 
Loun v. State, 273 S.W.3d 406,
420 n.24 (Tex. App.—Texarkana 2008, no pet.). 
Tutt has failed to establish the trial court erred.  Because Tutt has failed to convince this Court
the trial court had a duty to hold a formal evidentiary hearing sua sponte, we
overrule Tutt’s third and fourth points of error.

V.        Tutt’s Election to
Represent Himself Was Effective

            Tutt
claims, in his fifth and sixth issues, that the trial court’s limitations on
his choice of representation precluded his waiver of his right to counsel from
being made voluntarily and from being unequivocal.  Because the trial court restricted Tutt’s options
to being represented by counsel the trial court had previously appointed or
representing himself, Tutt claims his waiver of his right to counsel was made
under “duress.”  Tutt argues the waiver
must be in writing and unequivocal. 
Because Tutt noted “need time for att” on his written waiver, Tutt
contends his written waiver was not unequivocal.

            The
Sixth and Fourteenth Amendments to the United States Constitution guarantee
that a person brought to trial in any state or federal court shall be afforded
the right to assistance of counsel.  Faretta v. California, 422 U.S.
806, 807 (1975).  The Sixth and
Fourteenth Amendments to the United States Constitution also guarantee the
right of an accused to conduct his or her own defense.  Id.  Thus, the defendant decides whether to accept assistance of counsel or to conduct his or her own defense, and “his choice must
be honored” when the benefits of the assistance
of counsel are voluntarily,
knowingly, and intelligently relinquished with an informed awareness of danger
and disadvantages of self-representation. 
Id. at 834; Burton v. State, 634 S.W.2d 692, 694 (Tex.
Crim. App. [Panel Op.] 1982).  The waiver
must be clear and unequivocal.  Faretta,
422 U.S. at 807; Funderburg v. State,
717 S.W.2d 637, 642 (Tex. Crim. App. 1986). 


            The
trial court’s refusal to appoint different trial counsel or to grant a
continuance did not render Tutt’s waiver involuntary.  Tutt had been appointed trial counsel.  “A trial court is not obligated to search for
an attorney who meets with the approval of the accused.”  Webb v.
State, 533 S.W.2d 780, 784 n.3 (Tex. Crim. App. 1976).  The Texas Court of Criminal Appeals has
stated:

A trial court has essentially three options when
confronted with an accused who makes an eleventh hour request for change of
counsel.  First, at its discretion the
court can appoint, or allow the accused to retain, new counsel.  Second, should the trial court deny new
counsel, and the accused unequivocally assert his right to self-representation
under Faretta,
persisting in that assertion after proper admonishment, the court must
allow the accused to represent himself.  Third,
unless the trial court allows new counsel, it must compel an accused who will
not waive counsel and does not assert his right to self-representation to
proceed to trial with the lawyer he has, whether he wants to or not.

 

Burgess v. State, 816 S.W.2d 424, 428–29 (Tex. Crim. App.
1991).  Implicit in this ruling is the
conclusion that a trial judge’s refusal does not necessarily render an invocation
of the right to self-representation involuntary.  

            Tutt
claims the trial court erred in not appointing a different counsel because the
appointed trial counsel had a conflict of interest.  When the State requested the trial court
retain Tutt’s appointed counsel “as legal advisor and standby counsel,”[9]
appointed counsel objected, claiming he had been “misaligned”[10]
and such an action would have placed him in an “impossible situation.”  The trial court agreed appointed trial
counsel had been “misaligned,” but stated, “I think [appointed trial counsel]
would do a fine job representing [Tutt]” if Tutt wished to proceed with
appointed counsel’s representation.  

            In
order for a defendant to be entitled to new counsel, the defendant must
establish an actual conflict of interest.  Garner
v. State, 864 S.W.2d 92, 98–99 (Tex. App.—Houston [1st Dist.] 1993, pet.
ref’d).  A mere possibility of a conflict
of interest is not sufficient.  Id. at 99.  “[A]n ‘actual conflict of interest’ exists if
counsel is required to make a choice between advancing his client’s interest in
a fair trial or advancing other interests (perhaps counsel’s own) to the
detriment of his client’s interest.”  Acosta
v. State, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007) (quoting Monreal v.
State, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997)).  We do not believe the trial court erred in
its implied conclusion that no actual conflict of interest existed.  See
United States v. Moore, 159 F.3d
1154, 1158 (9th Cir. Cal. 1998) (threat of suing attorney did not create an
actual conflict because threat was not inconsistent with attorney’s goal of
rendering effective assistance of counsel); see
also Perry v. State, 464 S.W.2d 660, 664 (Tex. Crim. App. 1971) (filing
civil suit against attorney did not require appointment of different counsel
because “a defendant could effectively delay or prevent an appeal (or trial) by
filing a civil suit against his appointed counsel”).  The conflict alleged would not have required
appointed trial counsel to choose between advancing Tutt’s interests or
advancing other interests to the detriment of Tutt’s interests.  Because the trial court did not err in
determining no actual conflict of interest existed, Tutt was not entitled to
the appointment of new counsel.  

            Because
the trial court had no legal obligation to appoint a different attorney, the
question in this case is whether the trial court erred in permitting Tutt to
represent himself or should have compelled Tutt to proceed to trial with his
appointed trial counsel.  We are aware
that the Texas Court of Criminal Appeals has noted that a request for a
different attorney is not a clear and unequivocal request to waive
counsel.  See Thomas v. State, 550
S.W.2d 64 (Tex. Crim. App. 1977); see
Robles, 577 S.W.2d 699.  

            Tutt
argues the choice presented by the trial court in this case is a “Hobson’s
Choice.”[11]  In Renfro
v. State, the Texas Court of Criminal Appeals held the choice presented by
the trial court was in effect a “Hobson’s Choice”—or in other words, a choice
with the appearance of several options, but really only one option.  586 S.W.2d at 498.  We believe Renfro is distinguishable from the current case because in Renfro, the trial court presumed the
defendant wanted to represent himself.[12]  The following exchange occurred in Renfro:

THE COURT:  “Well, what I want to know from you at this
time, Mr. Renfro, is this:  Do you want
Mr. Williams representing you as your attorney in front of the jury when you go
to trial in your case Wednesday?”

 

THE DEFENDANT:  “No, I do not.”

 

THE COURT:  “You
do not?  You are going to represent
yourself; is that right?”

 

THE DEFENDANT:  “Yes.”

 

Id.  When Renfro informed the
trial court that he did not want his appointed counsel representing him, the
trial court presumed Renfro wanted to represent himself.  Id.  In this case, the trial court merely
explained the law to Tutt, explained another attorney would not be appointed,
and asked Tutt to choose between being represented by appointed counsel and
self-representation.  The trial court in
this case did not presume Tutt wanted to represent himself and advised against
self-representation.  The choice
presented by the trial court was consistent with Burgess, 816 S.W.2d at 429. 
The trial court merely asked Tutt to choose between the two available
options.  Both options were viable
alternatives, and the choice was not a “Hobson’s Choice.”

            The
record establishes that Tutt knowingly, voluntarily, and intelligently invoked
his right to self-representation.  The
trial court inquired into Tutt’s age, education, and mental health
background.  Tutt informed the trial
court that he was forty-nine, was seeking an associate’s degree in business
administration, estimated he had been convicted of criminal acts approximately
twenty-five times, had one jury trial, had worked in a prison law library, and
had “got 19 cases reversed while I was down there.”  The trial court also informed Tutt he would
be responsible for being aware of any possible defense or mitigation.  Tutt does not complain that the trial court’s
admonishments about the risks of self-representation were inadequate.[13]  Tutt’s complaint is that the trial court’s
limitation of his choice of being represented by appointed counsel or
representing himself was tantamount to “no choice.”  The trial court’s refusal to appoint a
different counsel or grant a continuance for Tutt to retain counsel did not
render Tutt’s election to represent himself involuntary.  The fact that Tutt desired an option to which
he was not legally entitled does not render his election between his available
choices involuntary.  The record supports
a conclusion that Tutt made a voluntary and “knowing exercise of the right to
defend himself.”  See Burgess, 816 S.W.2d at 428. 


            We
note the Texas Code of Criminal Procedure provides that the waiver of right to
counsel should be made in writing.  See Tex.
Code Crim. Proc. Ann. art. 1.051(g) (Vernon Supp. 2010).  The Texas Court of Criminal Appeals has held
Article 1.051(g) is not mandatory and the constitutional right to counsel can
be waived orally.  Burgess, 816
S.W.2d at 430–31.  The trial court
mentioned, on the record, Tutt’s notation on his written waiver and gave Tutt
another opportunity to proceed with the appointed trial counsel.  Tutt refused. 
Tutt waived his right to counsel orally to the trial court a total of
four times on the record and represented that he understood the risks of
self-representation.  Tutt’s clear and
unequivocal oral waiver, together with his written waiver of his right to
counsel and invocation of his right to self-representation was effective.  Tutt’s fifth and sixth issues are overruled.

VI.       Appellate Counsel’s
Performance Was Not Deficient 

            In
his seventh issue, Tutt argues his appointed appellate counsel’s performance
was ineffective for not raising the ineffective assistance of his trial counsel
in the motion for new trial.  Tutt
argues, if his appellate counsel had complained about his appointed trial
counsel’s performance in the motion for new trial, the record could have been
better developed for these issues on appeal.

            Tutt
argues there is no conceivable strategy for not raising ineffective assistance
in the motion for new trial.  We
disagree.  We will not presume Tutt’s
trial counsel rendered ineffective assistance of counsel and will not also
presume evidence of that ineffective assistance could have been developed
during a motion for new trial hearing. 
Tutt’s appellate counsel may have concluded the chance of a successful ineffective
assistance of counsel claim, under the facts of this case, was too minimal to
be raised in the motion for new trial. 
“If counsel’s reasons for his conduct do not appear in the record and
there is at least the possibility that the conduct could have been legitimate
trial strategy, we will defer to counsel’s decisions and deny relief on an ineffective assistance claim on direct
appeal.”  Ortiz v. State, 93
S.W.3d 79, 88–89 (Tex. Crim. App. 2002). 
We will not presume ineffective assistance of trial counsel to then
conclude appellate counsel rendered ineffective assistance of counsel.  The law requires we presume, unless otherwise
established, counsel rendered effective assistance of counsel.  Tutt has not directed this Court to where in
the record there is evidence to support his allegations.  Tutt’s seventh issue is overruled.

VII.     Conspiracy


            In his final issue, Tutt alleges the
trial court, his appointed trial counsel, and his appointed appellate counsel
conspired to violate his constitutional rights. 
Tutt’s brief on appeal does not advance any argument on this issue and
fails to cite any authority.  The record
contains no evidence of a conspiracy. 
Tutt’s eighth point of error is overruled. 

            For
the reasons stated, we affirm the judgment of the trial court. 

 

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          February
23, 2011

Date Decided:             March
11, 2011

 

Publish

 











[1]This
case was transferred to this Court from the Tyler Court of Appeals as part of
the Texas Supreme Court’s docket equalization program.  We are not aware of any conflict between the
precedent of the Tyler Court and the precedent of this Court on any issue
relevant in this appeal.  See Tex.
R. App. P. 41.3.

 





[2]In
his opening argument, Tutt argued he had a speech impediment.





[3]Sergeant
Elizabeth Bradbury, a sergeant with the Nacogdoches Police Department,
administered the intoxilyzer test. 
Bradbury testified the intoxilyzer requires two samples in order for the
test to be valid.  

 





[4]Tutt
was originally represented by appointed counsel on appeal, but after his motion
for new trial was filed, he obtained retained counsel to brief his appeal.  





[5]Although
Tutt provides this Court with some record citations, the citations provided do
not refer to any evidence in the record.





[6]After
electing to represent himself, Tutt requested the charges be dismissed because
his prior DWI convictions were too remote. 
The trial court correctly ruled that the provisions cited by Tutt have
been repealed by the Texas Legislature.  See Tex.
Penal Code Ann. § 49.09 (Vernon Supp. 2010). 





[7]Tutt
claims these cases each “involved, by the lower court, a hearing concerning the
accused’s objection [to] counsel and circumstances concerning same.”  None of these cases suggest a hearing was
held and evidence presented on the appointed counsel’s investigatory
efforts.  

 





[8]We
note that a trial court may have a sua sponte duty to investigate when a client
alleges facts sufficient to create an actual conflict of interest between the
client and his or her attorney.  See Holloway v. Arkansas, 435 U.S. 475
(1978); Lerma v. State, 679 S.W.2d
488, 490 (Tex. Crim. App. [Panel Op.] 1982). 
As discussed below, Tutt failed to allege facts sufficient to create an
actual conflict of interest with his appointed counsel.  We are not aware of any authority requiring a
trial court to hold a hearing on its own motion when a client merely complains
about his or her appointed attorney.





[9]Tutt
does not argue on appeal that he was entitled to standby counsel.  The appointment of standby counsel is discretionary
with the trial court.  See Scarbrough
v. State, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989).  





[10]We
note the court reporter may have misspelled “maligned” as “misaligned.”  Because the record reflects the attorney and
trial court used the word “misaligned,” we will use “misaligned.”





[11]In
his reply brief, Tutt cites Privett v.
State, 635 S.W.2d 746 (Tex. App.––Houston [1st Dist.] 1982, pet. ref’d).  While the facts of Privett are similar to this case, we decline to follow the
reasoning of the First District.  The
Texas Court of Criminal Appeals has yet to endorse the reasoning of Privett despite briefly referencing Privett in Burgess.  See Burgess, 816 S.W.2d at 429.  Tutt has not directed this Court to any cases
in which the Tyler Court of Appeals has adopted the reasoning of Privett. 
Privett is not binding
precedent on this Court or the Tyler Court of Appeals.  

 





[12]Prior
to Renfro, the Texas Court of
Criminal Appeals clarified that a request not to be represented by appointed
counsel was not a request for self-representation.  See
Thomas, 550 S.W.2d 64; see Robles, 577 S.W.2d 699.  As noted below, the defendant in Renfro agreed with the trial court’s
presumption of self-representation.





[13]We
note that Tutt alleges in his statement of facts that he was uninformed of “the
facts and/or allegations against him” and that “he was not familiar with the
legal defenses to the charges of DWI and /or [possession of a controlled
substance].”  Tutt does not advance any
argument that the admonishments were insufficient.  The trial court’s admonishments and inquiries
consist of approximately twenty-five pages of the reporter’s record.  The Texas Court of Criminal Appeals has held
no “formulaic questioning” or particular “script” is necessary.  Johnson
v. State, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988) (plurality op.); Blankenship v. State, 673 S.W.2d 578,
583 (Tex. Crim. App. 1984); see Martin v. State, 630 S.W.2d 952, 954
(Tex. Crim. App. 1982) (There is no requirement to inquire into a defendant’s
age, education, background, or previous mental history.).   








:yes'>  Consequently, Wilson obtained the loan in her
name and purchased the property for $389,000.00.  A down payment of $100,000.00 was made on the
property from proceeds of the jewelry business. 
The deed to the property is in Wilson’s name only. 

 





[3]The settlement
agreement, as dictated into the record, provides:

 

1. 
On or before 30 days after today or as soon thereafter as the bank has
made the loan that’s contemplated in paragraph three below, Kristi Wilson will
surrender the following items of personalty to Bob Berg by placing them in an
open area protected from weather and other hazards at 3872 County Road 3504,
and those items are as follows:

 

·        
all personal items belonging to Bob Berg as of
January, 2006;

·        
all business inventory of the business Bob Berg
Designs;

·        
the copier;

·        
a horse called Doc;

·        
the white cargo trailer and its contents, which
shall include everything that was in the trailer at the last time Bob Berg was
there, for example, booths, belts, inventory, clothes, et cetera;

·        
the aluminum horse trailer;

·        
mirror in the house;

·        
an orange tractor believed to be a Kabota [sic];

·        
a Bombay desk;

·        
an old laptop computer if it can be found;

·        
a plasma television, 52 inches wide or approximately
that wide; 

·        
all booths for showing merchandise, except the
screw together booths which Kristi Wilson 

will keep; 

 

2. 
Bob Berg will pick all of those items up by noon that day, weather
permitting.  After that hour, Kristi
shall have no responsibility for any of it. 
When he picks the personal property up, Wilson will leave the white 1999
Ford F-350 pickup at the same place, at the same time, and in substantially the
same condition it was when he got it a month or six weeks ago. 

 

3. 
No later than 30 days from today, Kevin Buchanan (attorney for Berg)
will notify me (Bruce Monning, attorney for Wilson) of the date and time and
give me at least between five and ten days in which to do it, that he would
like for the longhorn cattle that are in my possession and owned by the parties
or subject to this controversy to be delivered at a place of Mr. Buchanan’s
selection.  

 

4. 
No later than 30 days after today or at the same time if a real estate
closing is required in order for Ms. Wilson to raise the money, Ms. Wilson will
pay $25,000 cash to or for – to Bob Berg or for his account.  If it is necessary to use a bank loan to
raise that money, that money will be paid by the title company to Mr. Berg or
at his direction.

 

5. 
At the same time as the closing, or if it is not necessary for Wilson to
get a loan, Berg will execute a Special Warranty Deed to waive any and all
interest he has in the 89 acres that was described on Plaintiff’s Exhibit 6
earlier today to Ms. Wilson, and he will cause the lis pendens notice that’s
been issued in this case to be removed.  

                At
this point in the proceeding, Buchanan pointed out that “the loan that may be
necessary that is contemplated by the Rule 11 Agreement will be no more than
$25,000.”  Monning responded simply with
a “yes.”

 

6. 
Bob Berg, Martha Hayward, and Kristi Wilson agree to fully, completely,
mutually releasing [sic] all claims that any of them has or may have against
any other.  

 

7. 
Kristi Wilson and Bob Berg will not have any direct communications
between them by telephone, fax, email, or in person or otherwise.  This does not mean that the parties can have
no communication with Martha Haywood.  

 

8. 
Bob Berg shall own the business Bob Berg Designs under any by that name
[sic] including all cash, merchandise, inventory, work in progress, accounts
receivable, copy rights [sic], and any deviation [sic] of the name of Bob
Berg.  Kristi Wilson relinquishes all
claims she has to any of the Bob Berg designs or Bob Berg associated business.    

 

9. 
Kristi Wilson shall own the property described in Plaintiff’s Exhibit 6,
which is also 3872 County Road 3504, and everything in it or on it except the
items of personal property listed in paragraph one above. 

 

10. 
All claims asserted by all parties will be dismissed with prejudice to
refiling by any party.  Each party denies
any and all liability for any of the claims but agrees to this settlement only
by peace and to avoid the cost of further litigation.  

 

11. 
Kristi Wilson represents that she has turned over or will turn over all
business inventory where they’re in her possession, custody or control.  

 





[4]Berg’s
counterclaim also alleged fraud, breach of contract, breach of fiduciary duty,
conversion, theft (Texas Theft Liability Act), and sought a constructive trust
on certain real property.  

 





[5]Allegations of
breach were based on Berg’s refusal to accept the $25,000.00 payment tendered
by Wilson and further based on his refusal to execute a special warranty deed
to the certain real property, as contemplated by the agreement.  

 





[6]Wilson did not
request damages, other than her attorneys’ fees.

 





[7]In addition,
the judgment declared void the notice of lis pendens filed by Berg on or about
June 27, 2008, in Hopkins County (eighty-seven-acre property titled in Wilson’s
name).  

 





[8]Wilson’s
traditional motion for summary judgment alleges the existence of the Rule 11
agreement and recites that, subsequent to the execution of that agreement, Berg
filed an amended counterclaim urging new causes of action against her and
further asserting a breach of the agreement. 
Wilson claims the causes of action alleged by Berg (fraud, constructive
trust, conversion, civil claim of theft) were released pursuant to the Rule 11
agreement.  Wilson’s motion interprets
Berg’s amended counterclaim as a withdrawal of consent to the Rule 11
agreement.  Wilson moved the court to
enforce the settlement agreement, because she alleged it met the requirements
of Rule 11.  See W. Beach Marina, Ltd. v. Erdeljac, 94 S.W.3d 248, 255 (Tex.
App.—Austin 2002, no pet.).  Wilson
further moved the court to bar Berg’s counterclaims based on her affirmative
defenses of accord, satisfaction, release, and estoppel, and submitted
affidavits to show her alleged compliance with the terms of the agreement.  Wilson prayed that Berg take nothing on his
counterclaims because her summary judgment evidence established accord, satisfaction,
and release.  In his response, Berg
defensively asserted the existence of fact issues regarding Wilson’s alleged
repudiation of the agreement, and submitted affidavits in support of this
allegation.  The partial summary judgment
entered by the trial court found the existence of fact issues with respect to
breach of the Rule 11 agreement by “the parties.”

 





[9]Berg further
complains that the trial court erred in granting the partial summary judgment,
because that judgment foreclosed his counterclaims.  The court granted a partial summary judgment
finding only that the parties had entered into a valid, legal, and binding
agreement.  The agreement was reduced to
writing and was dictated into the court’s record by the respective attorneys
for each party.  Both parties approved
the settlement agreement as dictated into the record.  An agreement to settle a case is enforceable
by the trial court if it complies with Rule 11 of the Texas Rules of Civil
Procedure.  See Padilla v. La France, 907 S.W.2d 454, 460 (Tex. 1995).  To comply with Rule 11, the agreement must be
either (1) in writing, signed, and filed with the papers as part of the record,
or (2) made in open court and entered of record.  Tex. R.
Civ. P. 11; Padilla,
907 S.W.2d at 459.  Thus, a settlement
agreement between the parties is a valid and enforceable agreement, even though
it is not in writing, where the agreement is made in open court and agreed to
by the parties.  E. Tex. Salt Water Disposal Co. v. Hughes, No. 12-04-00333-CV, 2006
WL 300410 (Tex. App.—Tyler Feb. 8, 2006, pet. denied) (mem. op.).  Moreover, settlement agreements are governed
by contract law.  Alcantar v. Okla. Nat’l Bank, 47 S.W.3d 815, 819 (Tex. App.—Fort
Worth 2001, no pet.).  As such, a
settlement agreement must define its essential terms with sufficient detail to
allow a court to determine the obligations of the parties.  Sadeghi
v. Gang, 270 S.W.3d 773, 776 (Tex. App.—Dallas 2008, no pet.).

                Here,
the parties’ actions of dictating their agreement into the record in open court
complied with the procedural format of Rule 11 of the Texas Rules of Civil
Procedure.  Neither party contends the
essential terms of the Rule 11 agreement are not sufficiently definite.  Thus, the trial court’s finding that the Rule
11 agreement was valid (as preceded by its findings that the parties entered
into the agreement, which disposed of all claims and disputes between them,
that the agreement was dictated into the record, and that the agreement was
approved by the court) appears only to mean that the agreement indeed complied
with Rule 11.  The agreement was binding
because its terms were sufficiently definite to permit enforcement.  Wilson, therefore, contends that the trial
court’s finding that the agreement was “valid, legal and binding” means nothing
more than it complied with the terms of Rule 11 and was sufficiently definite
to enforce.  We agree.  The partial summary judgment did not resolve
or attempt to “rule” on Berg’s counterclaims.

 





[10]None of these
cases adopt a procedure which would omit a judicial determination of a
contested claim of material breach of a settlement agreement in favor of
proceeding directly to trial on the settled claim(s).  

 





[11]To constitute
repudiation, a party to a contract must absolutely and unconditionally refuse
to perform the contract without just excuse. 
Bans Props., L.L.C. v. Housing
Auth. of Odessa, 327 S.W.3d 310, 315 (Tex. App.—Eastland 2010, no
pet.).  A party claiming anticipatory
breach of a contract must establish the following three elements:  (1) a party to a contract has absolutely
repudiated the obligation; (2) without just excuse; and (3) the other party is
damaged as a result.  Pollack v. Pollack, 39 S.W.2d 853, 855
(Tex. Comm’n App. 1931, holding approved); Hauglum
v. Durst, 769 S.W.2d 646, 651 (Tex. App.—Corpus Christi 1989, no
writ).  The record here does not indicate
repudiation of the settlement agreement by either party.  

 





[12]In context,
this is the acknowledgment:

 

Mr. Buchanan
[attorney for Berg]:  We did not comply
with the Rule 11 Agreement in a sense that once she tendered the money to us,
then we didn’t accept it, and we didn’t tender ours.  So, what - - I have an affirmative defense
plead which is offset in rescission - -                                                             essentially rescission. 

 

THE COURT:      Let’s say you get that issue, let’s say it’s found to be true,
where does that leave you?

 

Mr. Buchanan:    Election of remedies.  I think the way the charge gets set up, it’s an
election of remedies.  I get to ask the
jury a question as to was there a material breach.  Both parties ask that question.  I get to ask the question as to whether or
not I am excused . . . from performance. 
Then we’re both going to ask questions about what our damages are.   

 

Mr. Rogers:           There it is.

 

Mr. Buchanan:  We’re
both - - the reason why we’re asking those is because if I win the    rescission issue then I get - - I’m the
winner.  I get to elect which way we’re
going.  Either I can collect my money damages
with the offset from them for whatever money damages they have, or I can elect rescission,
and we go back to square one. 

 

 





[13]The underlying
claims asserted by Berg as counterclaims included fraud, breach of fiduciary
duty, conversion, civil theft, and constructive trust.  

 





[14]Rule 174(b) of
the Texas Rules of Civil Procedure authorizes bifurcated trials.  “The court in furtherance of convenience or
to avoid prejudice may order a separate trial of any claim, cross-claim, or of
any number of claims, counterclaims, third-party claims, or issues.”  Tex.
R. Civ. P. 174(b).  We do not
know, from this record, what the trial court would have done if the jury had
come back with a verdict favoring Berg, for example, whether it might have
continued into a second part of trial on the underlying issues.  See
Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 30 (Tex. 1994).





[15]Berg also
claims the trial court erred in summarily finding the Rule 11 agreement was
“valid, legal and binding” because such relief was neither prayed for nor
sought in Wilson’s motion for summary judgment. 
Wilson’s summary judgment motion asked the court to bar Berg’s
counterclaims based on her affirmative defenses of accord and satisfaction,
release, and estoppel.  The prayer asks
that the court render judgment (1) that defendants take nothing on the claims
asserted on defendant’s first amended counterclaim and (2) that Wilson recover
costs from defendants, attorneys’ fees, together with such other and further
relief to which defendants may be entitled. 
Wilson did not specifically ask the trial court to find the agreement to
be “valid, legal and binding.”  Under
Rule 166a(c), Texas Rules of Civil Procedure, a motion for summary judgment
must “state the specific grounds therefor,” and the trial court is to render
judgment if “the moving party is entitled to judgment as a matter of law on the
issues expressly set out in the motion or in an answer or any other response.”  Tex. R.
Civ. P. 166a(c).  Here, Wilson’s
summary judgment asserted that a Rule 11 agreement existed between the parties
settling all matters.  In addition,
Wilson alleged, in great detail, her compliance with that agreement.  Wilson’s request that the trial court
determine the affirmative defenses of accord and satisfaction, release, and
estoppel were predicated on her
compliance with the Rule 11 agreement.  The
finding of a valid Rule 11 agreement is implicit in Wilson’s request that the
trial court bar Berg’s counterclaims based on her compliance with the terms of
that agreement.  The issue of the
validity of the Rule 11 agreement was the predicate on which the requested
relief was based.  By definition, the
motion included a request for such relief. 
This appears to be a case where the trial court did not grant more
relief than requested.  Rather, in only
finding the Rule 11 agreement valid, legal, and binding, the trial court
granted less relief than requested.





[16]The questions
submitted here were submitted in the precise manner competing claims for breach
are to be submitted under the PJC. 
Questions 1 and 2 read as follows:

 

Did Bob Berg fail to comply with
the Rule 11 Settlement Agreement? 
(Question number 2 is the same, but asks if Kristi Wilson failed to
comply with the Rule 11 Settlement Agreement). 
Both questions were accompanied by the following instructions:

 

1.             A
failure to comply with an agreement must be material.  The circumstances to consider in determining
whether a failure to comply is material include:

 

                (a)  the extent to which the injured party will be
deprived of the benefit which he reasonably expected;

 

                (b)  the extent to which the injured party can be
adequately compensated for the part of that benefit of which he will be
deprived;

 

                (c)  the extent to which the party failing to
perform or to offer to perform will suffer forfeiture;

                

                (d)  the likelihood that the party failing to
perform or to offer to perform will cure his failure, taking into account the
circumstances including any reasonable assurances;

 

                (e)  the extent to which the behavior of the party
failing to perform or to offer to perform comports with standards of good faith
and fair dealing;

 

                (f)  the extent to which it reasonably appears to
the injured party that the delay may prevent or hinder the injured party in
making reasonable substitute arrangements;

 

2. 
Compliance with an agreement must occur within a reasonable time under
the circumstances, unless the parties agreed that the compliance must occur
within a specified time and the parties intended compliance within such time to
be an essential part of the agreement.

 

3. 
In determining whether the parties intended time of compliance to be an
essential part of the agreement, you may consider the nature and purpose of the
agreement and the facts and circumstances surrounding its making.

 





[17]Berg further
alleged Wilson’s claim was barred by the affirmative defenses of waiver,
justification, modification, offset, ratification, estoppel, fraud, and unclean
hands.  

 





[18]Berg’s third amended
answer does not separately assert the affirmative defense of excuse based on
repudiation.   Berg’s counterclaim
alleges a separate breach of contract claim, together with an alternative claim
of repudiation.  

 





[19]Berg’s
counterclaim for breach of contract states that Wilson materially breached the
settlement agreement by:

 

(1) failing to
timely tender the $25,000.00 payment required by the Settlement Agreement, (2) failing
to turn over all inventory to BOB BERG, (3) failing to deliver inventory
conveyed to BOB BERG under the terms of the Settlement Agreement, (4) failing
to deliver personal items conveyed to BOB BERG under the terms of the
Settlement Agreement, (5) converting to her own use inventory conveyed to BOB
BERG under the terms of the Settlement Agreement and/or (6) using
copyrights and intellectual property belonging to Bob Berg Designs conveyed to
BOB BERG under the terms of the Settlement Agreement.

 

Berg’s claim of anticipatory repudiation indicates:

 

In addition and/or in the
alternative, WILSON’S actions, as described above, [actions purporting to show
a breach of contract] including, but not limited to, her failure to tender
payment of the $25,000.00 in a timely manner despite repeated requests, her
refusal to deliver inventory of Bob Berg Designs, and her use of copyrighted
intellectual property belonging to BOB BERG and Bob Berg Designs, constituted a
refusal or inability to comply with the Rule 11 Settlement Agreement.  The acts or omissions of WILSON constituted
an unequivocal expression of her inability or refusal to comply with the Rule
11 Settlement Agreement such that BOB BERG is justified in accepting this expression
as a final anticipatory breach or repudiation of the Rule 11 Settlement
Agreement and he is relieved of any further obligations under the Rule 11
Settlement Agreement.  BOB BERG seeks
rescission of the Rule 11 Settlement Agreement. 





[20]The lis
pendens at issue was filed in the district clerk’s office of Hopkins County,
Texas.  Section 12.007 of the Texas
Property Code provides that a notice of lis pendens is to be filed with the
county clerk of each county where a part of the property is located.  Tex.
Prop. Code Ann. § 12.007(a) (West Supp. 2010).  Wilson thus contends the lis pendens is
void in any event.  See Khraish v. Hamel, 762
S.W.2d 906 (Tex. App.—Dallas 1988, writ denied) (lis pendens filed in
wrong county was void for failure to comply with statute).





[21]The scope of
the UDJA includes, 

 

A person interested under a deed,
will, written contract, or other writings constituting a contract or whose
rights, status, or other legal relations are affected by a statute, municipal
ordinance, contract, or franchise may have determined any question of
construction or validity arising under the instrument, statute, ordinance,
contract, or franchise and obtain a declaration of rights, status, or other
legal relations thereunder.

 

 Tex. Civ. Prac. & Rem. Code Ann. §
37.004(a) (West 2008).





[22]The motion for
new trial claimed a lack of evidence to support the jury’s answers to the
breach of contract issues and further complained of the trial court’s refusal
to submit defendant’s requested jury question on excuse based on breach and/or
repudiation.  

 





[23]At oral
argument, counsel for Berg conceded that this is not a trespass to try title
action.